Bartol, C. J.,
delivered the opinion of the court.
This suit was brought by the appellants’ testator, in his lifetime, to recover damages for the alleged refusal by the York and Cumberland Rail Road Company, to convert into its capital stock certain.of its bonds which he held and which were payable to Gonder, Burke & Co., or bearer. He held twenty-five of the bonds, each for $1,000, with fifteen interest warrants, of $30 each, on each bond, dated the 7th of January, 1851, bearing interest at six per cent, per annum, payable semi-annually, and to mature on "the 7th of January, 1871. They were secured by a second mortgage of all the property and effects of the York and Cumberland Rail Road Company, a corporation chartered by the State of Pennsylvania in 1846. Each of the bonds contained the following clause: “'And the said Gonder, Burke & Co., or any holder of this bond, are and shall be entitled to convert this bond, and the money due thereon, into an equal amount of the capital stock of the York and Cumberland Rail Road Company, on the surrender to said Company of this bond; whereupon the said holder shall receive from said Company a certificate of said stock to the amount thereof.” The alleged breach of this undertaking forms the ground of the present suit. It appears by the proof that, on the 15th of May, 1863, the appellants’ testator, for the first time, made a demand upon the appellee for the conversion of his bonds into the stock of the York and Cumberland Rail Road Company, which was refused; the appellee offering to convert the same into its own stock, dollar for dollar.
At the date of the bonds, the line of communication now known as the Northern Central Railway Company, was owned by four distinct corporations, viz: The Baltimore and '“Susquehanna Rail Road Company, incorporated by the State of Maryland in 1828; the York and Maryland Line Rail Road Company, incorporated by the State of Pennsylvania in 1832; the York and Cumberland Rail Road Company, chartered by the latter State in 1846, and the Susquehanna Rail Road Company, chartered by the same State in 1851; the-rail roads of the three last mentioned lying entirely within the limits of Pennsylvania. In the year 1854, the Northern Central Railway Company (the appellee) was formed by the consoih *567 dation of the four companies above named. The States of Maryland and Pennsylvania respectively, gave their legislative sanction to such consolidation; the former, by the Act of January session, 1854, ch. 250, and the latter, by an Act passed May 3rd, 1854, No. 531. These Acts made it one of the conditions of consolidation, that the property of each company should remain liable for the respective debts and liabilities of that company, unless such debts and liabilities should be assumed by the new company.
The provisions of the Pennsylvania Statute on this subject, were as follows:
“ First. That all existing contracts, engagements and liabilities of each of the said companies, shall continue to bind them respectively, and their property and effects, as fully as before they shall have become consolidated into one company; or that such contracts, engagements and liabilities shall be duly adopted and assumed by the consolidated company, in such manner, and to such extent, as shall be satisfactory to all parties having an interest in the same.”
The contracts and liabilities of the York and Cumberland Rail Road Company, and of the appellee upon its assumption thereof, must be governed by the provisions of the Pennsylvania Statute, as the former company was chartered by, and lay wholly within, that State.
No question arises in this case upon the regularity and binding force of the proceedings by which the several companies formed the consolidation, and conveyed to the new *company all the estate, property and rights belonging to them respectively. The negotiations began in July, 1854, and culminated in the adoption of articles of union on the 4th day of December, 1854, which were duly ratified by the respective companies, ^nd the necessary deeds of conveyance were executed in December, 1854.
Without reciting here at length the articles of union entered into between the several companies, by which their consolidation was effected, it is- sufficient to say, that they provide in substance that, after the organization of the new company, and the execution and delivery of the necessary deeds of conveyance, they shall be merged into one body corporate under the name and style of “ The Northern Central Railway Com *568 pany; ” that all the property, rights and privileges belonging to each, shall be vested in the new company, and the debts arid liabilities of each are declared to be “ the debts and liabilities of the consolidated company, subject to the conditions prescribed in, and as the same are provided for and required by the said Acts of consolidation.”
The record show's that, from the date of the consolidation in 1854, up to its last financial statement in 1864, the appellee has charged itself with the $25,000 of bonds of the York and Cumberland Rail Road Company held by the appellants’ testator. It also appears from the proof that, at the time of the consolidation, the stockholders of the York and Cumberland Rail Road Company delivered up their stock to be cancelled, and received in lieu thereof the stock of the appellee, at the rate of two shares of the latter for one of the former, that being the rate of their relative values, as then agreed on. The appellants’ testator did not then elect to convert his bonds into stock, but continued to hold them until 1863, when, as we have before said, he made the demand on the appellee for their conversion, and brought this suit to recover damages for the refusal to comply with his demand.
This theory of the appellants’ case, as stated in their brief, is, that “ being entitled at any time before maturity, to concert the bonded debt into an equal amount of stock, the consolidation of the York and Cumberland Rail Road Company with the Northern Central Railway Company could not affect their testator’s guaranteed rights as bondholder; and that being entitled, as of the date of the demand, to so many shares of the stock of the York and Cumberland Rail Road Company, one of which ivas, by the articles of union, equivalent in value to two shares of the Northern Central Railway Company he was entitled at the date of his demand and offer to so many specific shares of the York and Cumberland Rail Road Company, or to what would represent them in value; that is to say, double their amount in the stock of the Northern Central Railway Company.”
The questions presented on this appeal have been somewhat narrowed by the course of the trial below. The Superior Court granted the first prayer of the appellants which asserted their right to recover upon the finding by the jury of the facts therein *569 stated. No exception to the granting of that prayer having been taken by the defendant, we are not called on to review it on this appeal, except so far as the legal proposition, therein contained, is connected with the decision upon the other prayers embraced in the exception. These relate to the rule or measure of damages.
By the second prayer of the appellants they asked the court to direct the jury that the measure of damage to be awarded to them was the value, at the time of the demand and refusal, of so much of the stock of the York and Cumberland Rail Road Company, as would be equal, at par, to the amount of debt secured by the bonds; and- in estimating such value, the jury might consider the market value of the stock of the defendant on that day, and also the relative value of the stock of the York and Cumberland Rail Road Company and of the stock of the defendant, as shown by the evidence in the cause.
The third prayer asserted the measure of damages to be the value of the stock of the York and Cumberland Rail Road Company at the time of the demand and refusal, to be estimated from all the evidence in the cause.
*In our opinion the Superior Court committed no error in refusing to grant these instructions. Apart from other objections to them, it may be remarked that there was no evidence in the cause from which the jury could estimate the value of the stock of the York and Cumberland Rail Road Company, at the time of the demand; no such stock was then in existence, nor had any existed in fact after the consolidation of the companies ; at that time, which was nearly ten years before the offer to convert, the relative value of that stock, as compared with the stock of the appellee, had been fixed and agreed on for the purposes of the consolidation. But that could furnish no standard whatever for estimating either the actual or relative value of the stock in May, 1863. To have granted these prayers would have left the jurjr to mere speculation and conjecture, and without any evidence to guide them in making up their verdict.
But these prayers were objectionable on other grounds. They both rest upon the legal propositions that the obligation to convert the money secured by the bonds, into the stock of the York and Cumberland Rail Road Company, continued after the consolidation had been effected, and that the right of the appellants’ *570 testator, as bondholder, to demand such conversion, was a subsisting right in May, 1863, notwithstanding all the facts disclosed by the evidence.
We do not concur in that view, but are of opinion that by the act of consolidation the York and Cumberland Rail. Road Company ceased to exist as a separate corporation so far as respected its power to create, or issue certificates of capital stock. By the terms of the consolidation, all its shares of capital stock were actually surrendered up and cancelled, and thereafter all its property and franchises were represented by the capital stock of the Northern Central Railway Company, the new corporation, to which all its property had been transferred. It is true all its debts, liabilities and obligations were assumed by the new corporation, and among them the liability and obligation created by the bonds. That appears on the *face of the bonds, to be to pay a certain sum of money with interest, or to convert the same into stock of the York and Cumberland Rail Road Company, at the option of the holder. The primary object of the bonds was to secure the payment of the money, while they gave to the holder the alternative right to convert. This last has become impossible by the act of consolidation, for there is no such stock nor any power to create it. What then is the consequence? The appellants’ counsel have argued that such impossibility does not excuse either the company which issued the bonds, or the appellee which assumed the obligation, because it is said such impossibility, if it exists at all, has arisen from their own act; and it has been further argued that provision might have been made in the articles of union, for the reservation or transfer to the new company of so much of the stock of the York and Cumberland Rail Road Company as might be required to meet the alternative .obligation of the bonds. But it appears from the proof in the cause, that the appellants’ testator was cognizant of the terms of the consolidation, assented thereto, and was satisfied therewith, and took an active part in effecting the arrangement. Ele was a stockholder of the Susquehanna Rail Road Company, and one of the committee appointed on behalf of that company to arrange the terms of the union. He was a stockholder of the York and Maryland Line Rail Road Company, and as such took part in the proceedings by which the articles of union were unanimously adopted by that company. The articles of union, *571 on their face, declare that the stockholders of the several companies assented thereto. These facts, if found by the jury would be conclusive to bind the appellants’ testator, and estop him from claiming against them. By the words of the Pennsylvania Statute above cited, the appellee was bound to assume the existing contracts, and liabilities of the consolidating companies “ in such manner as would be satisfactory to all parties having an interest in the same.” If the terms of union were satisfactory to the appellants’ testator, and he acquiesced therein, he is *bound by all their legal consequences and effects. .He had at that time the option to have his bonds converted into stock, according to their terms, having elected not to do so when it was practicable, and having acquiesced and participated in the arrangement by which it became impossible afterwards to perform the alternative obligation pf the bond, he is bound by his election and precluded from impeaching the arrangement, which at the time it was made was in the words of the statute satisfactory to him. For these reasons we affirm the ruling of the Superior Court upon the second and third prayers of the appellants.
We are also of opinion that the appellants are not entitled to a reversal of the judgment on account of any thing contained in the appellee’s fourth prayer which was granted. Having before said that the appellants were not entitled to claim damage on the basis of a supposed right in their testator to claim a conversion of the bonds into the stock of the York and Cumberland Rail Road Company, at the time when he made the offer, which right we have said did not then exist, it follows that ho injury was done them by instructing the jury in the language of the fourth prayer, that even if the defendant was bound to convert the bonds into stock at the time the offer was made, its obligation would have been discharged by delivering a certificate of its own capital stock of an equal amount with the principal of the bonds and the interest due thereon, and that consequently the appellants could only recover the market value of such certificate at the time of the offer with such allowance for interest as the jury might think proper to give.
Under this instruction the appellants recovered the full measure of damage to which they could in any event be entitled, and there is therefore no ground for reversing the judgment.

Judgment affirmed.