## ROSENKRANS *v.* LAFAYETTE, B. & M. R. Co. and others.

*(Circuit Court, D. Indiana.* April, 1883.)

PRIVATE CORPORATIONS—CONSOLIDATION—NOTICE TO BONDHOLDERS.

Upon the consolidation of two incorporated companies, the holder of bonds of one company, containing a clause authorizing their conversion at any time before maturity into the capital stock of the company issuing them, at par, cannot be deprived of the privilege of such conversion, and relegated to the rights conferred upon him instead by the articles of consolidation, until he has had a fair opportunity, after notice of the contemplated change, to exercise his original rights, and has elected not to do so.

In Equity.

*Judd & Whitehouse* and *C. B. Lawrence,* for plaintiff.

*Harrison, Hines & Miller* and *R. P. Ranney,* for defendants.

DRUMMOND, J. The Lafayette, Bloomington & Muncie Railway Company, having a capital stock of $1,000,000, on the first of May, 1879, executed and issued of its first mortgage bonds the amount of $2,500,000, and also issued its income bonds to the amount of $1,000,000. To secure both these issues, a mortgage, or deed of trust, was given to the Central Trust Company of New York. The plaintiff is the owner of five of these income bonds, of $1,000 each. These income bonds contain this clause: "This bond may, at the option of the holder, be converted into the capital stock of the said railway company at par, at any time before maturity." The Lake Erie & Western Railway Company, with a capital stock of $3,000,000, also executed in August, 1879, a mortgage, or deed of trust, to the Central Trust Company of New York, to secure an issue of income bonds to the amount of $1,485,000. In 1879 these two companies were consolidated, the consolidated company including a railroad from Fremont, in the state of Ohio, through Indiana to Bloomington, in the state of Illinois. By the consolidation, the capital stock of the Lake Erie & Western Railway Company was fixed at $3,000,000. The allegation of the bill is that at the time of the consolidation the stock of both companies was illegally increased, or, as the bill terms it, "watered." By the articles of consolidation there were awarded to the holders of the capital stock of the Lake Erie & Western Railway Company $3,000,000, or 30,000 shares, and to the holders of stock of the Lafayette, Bloomington & Muncie Railway Company $4,000,000, or 40,000 shares, subject to the following proviso:

"Provided, however, that in case the holder or holders of any of the income bonds secured by the mortgages of the first and second parties hereto to the Central Trust Company of New York shall, at any time after such consolidation, avail himself or themselves of the privilege of conversion into capital stock therein contained, then the said consolidated company shall, and is hereby authorized to, make from time to time such increase in the total amount of its capital stock as shall equal the amount of such conversion of

said 'income bonds, or so many thereof as shall be converted, and for no other purposes."

The articles of consolidation also provided that the directors of the consolidated company "shall be elected by the holders of the stock of the company, and such of its bonds as are invested with the voting privileges, voting in person or by proxy. Every share of stock of such consolidated company, and each one hundred dollars of par value of bonds invested with the voting privilege, shall entitle the holder to one vote, and a majority of all the votes cast shall elect."

There were accordingly issued to the holders of the stock of the Lafayette, Bloomington & Muncie Railway Company four shares of the consolidated company for each share which they held of the Lafayette, Bloomington & Muncie Railway Company. The plaintiff did not surrender his bonds and take stock of the Lafayette, Bloomington & Muncie Company; and he claims that having the option to surrender the bonds, and take the stock of the company, in giving, by the articles of consolidation, for each share of the old company four shares of the consolidated company, an unjust advantage has been granted to the stockholders and bondholders, and that it was a violation of the original contract made in the income bonds; and therefore, the plaintiff ought to be placed in the same position as the stockholders of the Lafayette, Bloomington & Muncie Railway Company.

It is also ground of complaint that no notice was given to the bond-holders to exercise the option which they had, to convert their bonds into stock prior to or at the time of the consolidation, and that the consolidated company has refused, on demand made, to deliver to the plaintiff the stock of the consolidated company in the same proportion as to the holders of the stock of the Lafayette, Bloomington & Muncie Railway Company. The mortgages or deeds of trust which have been referred to, in the one case cover the railroad from Fremont, in Ohio, to Muncie, in Indiana, and in the other from Muncie, in Indiana, to Bloomington, in Illinois."

The defendants, by way of defense, allege that ever since the consolidation of the two lines a share of the capital stock of the consolidated company has been of much greater value than a share of the capital stock of the Lafayette, Bloomington & Muncie Railway, and that the income bonds of the latter company are of much greater value in consequence of the consolidation. It is also alleged that personal notice was given to all the stockholders of the Lafayette, Bloomington & Muncie Railway Company of the meeting of the stockholders for the ratification of the consolidation agreement, and that they had ample time and opportunity to exchange their bonds for stock before the consolidation, if they had desired so to do. It is also alleged that the plaintiff became the purchaser and owner of the bonds held by him after the consolidation, and with full knowledge of such consolidation and its terms; and became the owner of the bonds

held by him more than a year prior to the commencement of this suit.

By the articles of consolidation of December 9 and 10, 1879, the consolidated company was called the Lake Erie & Western Railroad Company. The capital stock of the new company was to be $7,000,000, divided into 70,000 shares of $100 each. To the holders of the stock of the Lake Erie & Western Railroad Company, one of the parties to the consolidation, $3,000,000, or 30,000 shares, were assigned; to the holders of the stock in the Lafayette, Bloomington & Muncie Railroad Company, another party to the consolidation, $4,000,-000, or 40,000 shares, were assigned. There was a proviso that in case the holders of any of the income bonds secured by the mortgages of the first and second parties, to the Central Trust Company, should desire to become parties to the consolidation by converting their bonds into capital stock, then the consolidated company was to increase the total amount of its capital stock in proportion to the amount of such converted income bonds. Various other provisions were made as to who should be the board of directors of the consolidated company, how they should be elected after the first regular election, and giving to the holders of the stock of the company, or such of its bonds as had been invested with the voting privilege, the right to vote in person or by proxy, and various other provisions not necessary to mention.

The income bonds of the plaintiff were given in May, 1879. If the Lafayette, Bloomington & Muncie Railway Company and the Lake Erie & Western Railway Company had the right to consolidate the two roads, that right existed prior to the issue of the income bonds, and it may therefore be said that the bonds in controversy in this case were issued subject to the right of consolidation, and it becomes a grave question whether, in prescribing the terms of the consolidation, the Lafayette, Bloomington & Muncie Railway Company was obligated to give the same privilege to the holders of the income bonds as to the owners of the stock of the company, where the holders had not chosen to exercise the option conferred upon them by the terms of the bonds. If that were an absolute right, unchangeable and unaffected in any way by the consolidation, then the only construction that can be given to the articles of consolidation, consistent with that view of the case, is that the conversion of the income bonds into stock must be upon the same terms as the conversion of the old stock into the stock of the consolidated company; but if it be assumed that, taking these income bonds subject to the right of consolidation, the company could call upon the holders of the bonds to exercise the right of conversion in view of the changes to be effected by the act of consolidation, then it would seem as though the privilege must have been distinctly given to the holders of the income bonds. In other words, they must have had the power and opportunity of converting their bonds into stock before they could be deprived of the right thus existing

The allegation of the bill as amended, upon this point, is that no notice was given to the holders of the income bonds of the proposed consolidation, or that the consolidation had been made, or requiring them, as holders or owners of the income bonds, to make an election as to the conversion of such bonds. The answer by the defendant does not seem to come up to the measure of the allegation made by the plaintiff; which answer is substantially as follows:, It denies that notice was not given before or after the consolidation to the holders of the income bonds, informing them of such proposed consolidation. Now, it seems to me that does not go far enough, and does not, with sufficient distinctness, traverse the allegation in the bill upon that subject. It should clearly appear, not only that the bondholders had notice of the proposed consolidation, and its terms, but that the opportunity should have been given to them of exercising the option conferred by the bonds. In other words, they should have had, before their rights could be said to be foreclosed, the power of choice, and it should appear that having this power they had chosen to retain their income bonds instead of the stock thus proffered to them.

I do not wish, unless it is absolutely necessary,—and I cannot say that I so regard it in this state of the case,—to hold that this consolidation was illegal. If illegal, serious consequences would follow, and affect a large amount of property, and I prefer to place it, in the present state of the case, upon the ground that it should affirmatively appear, before the consolidation was consummated, the holders of the income bonds were distinctly notified, or clearly had the opportunity of converting the bonds into stock and declined to convert them.

The effect of the consolidation was to destroy the capital stock of the two constituent companies, and to substitute for it the stock of the consolidated company, and therefore it was not possible, unless provision were made in the articles of consolidation, to comply with the condition contained in the income bonds. The stock of the Lafayette, Bloomington & Muncie Railway Company having ceased to exist, and therefore if, having had the power of choice, the holder of the income bonds has not chosen to exercise it, then, of course, the stock of the old company could not be given to it; so that, as at present advised, I cannot say that if the holder of the income bonds had full opportunity to convert the bonds into stock before the consolidation, and also had full knowledge of the terms of the consolidation and failed to do so, that he would afterwards have the right, for $1,000 of bonds, to obtain $4,000 in stock of the consolidated company. Neither am I prepared to say that the consolidation of the two companies was necessarily invalid, and the only decision that the court now makes is that it does not clearly appear by the answer that the holder of the income bonds had the right which, by the terms of the contract, was conferred upon him.