EDWARD E. PRATT *vs.* AMERICAN BELL TELEPHONE COMPANY & others.

Suffolk.   Nov. 19, 1885. — Feb. 26, 1886.   DEVENS & C. ALLEN, JJ., absent.

A corporation issued certain notes with interest coupons attached, payable to bearer in three years after their date, and containing this provision: " The holder hereof may " on a day named, " or " on another day named, six months later, "and at no other time, exchange this note, coupons not due being attached, for the stock of the company at par, that is, for one share." At a meeting of the corporation, held after this issue and before the first date named in the note, it was voted to increase the capital stock, and the stockholders were given the right to take shares at par therein, in the proportion of one new share to three old shares held by them respectively. At the time the notes were issued, there was, in the hands of certain trustees, a sufficient amount of full paid stock of the corporation, subject to its control and not otherwise appropriated, to enable it to perform its contract to deliver stock for the notes. *Held*, that a bill in equity, filed on the day when the above-named meeting was held, by a holder of said notes, to enable him to share on equitable terms in the benefit of the issue of the additional shares, could not be maintained.

Where the terms of a statute of one State which have received a judicial construction are used in a later statute.in another State, that construction is to be given to the later statute.

If a person contracting to deliver a certain number of shares of stock at a future day has that number of shares in his possession or control when he makes the contract, the sale of such shares by him before the date of delivery mentioned in the contract does not make the original contract illegal, under the Pub. Sts. c. 78, § 6.

GARDNER, J.   The plaintiff in this bill in equity, which was filed on March 27, 1883, held certain notes with coupons attached, payable to the bearer thereof in three years after their date,

issued by the defendant company on October 20, 1882. Each note contained this provision: "The holder thereof may, on the twentieth of April, 1884, or on the twentieth ot October, 1884, and at no other time, exchange this note, coupons not due being attached, for the stock of the company at par, that is, for one share." At a meeting of the stockholders of the company held on March 27, 1883, it was voted to increase the capital stock, and the stockholders were given the right to take shares at par therein, in the proportion of one new share to three old shares held by them respectively.

The bill alleges, that, at the time the convertible notes were issued, there was in the hands of the defendant trustees a sufficient amount of full paid stock of the company, subject to its control and not otherwise appropriated, to enable it to perform its contract to deliver stock for said notes, and that there was no other way in which the company could lawfully perform its contract than by the delivery of said shares so held by said trustees; that the vote to issue the notes and the issuing them was an appropriation of said stock to the fulfilment of said contract; and that the contract became in substance a contract to deliver said stock in exchange for said notes, and charged said stock in the hands of the trustees with a trust for the benefit of the holders of said notes. The plaintiff, as the holder of a large number of these convertible notes, contends that he had the right to share on equitable terms in the benefit of the issue of said additional shares.

The first inquiry respects the construction of the contract between the parties. This is in writing, and is embraced in the convertible note which the plaintiff holds against the company. It will be seen that this writing contains no reference to the shares of stock held by the trustees when the note was issued. There is no agreement therein that the option which was given the holder should apply to any particular shares of stock of the corporation. No express trust is created therein in relation to any shares of the company's stock. In all these respects the contract is bald and naked.

The plaintiff contends that the words "stock of the company," as used in the contract, have reference to the shares then held in trust for the company, and that the contract is to be

construed as a contract to sell a specified portion of said shares; that, inasmuch as the parties must be presumed to have intended that which was legal rather than illegal, their contract will be construed accordingly; that the only possible legal contract was a contract to sell shares then owned by the company, and hence the presumption is that the company intended to contract to sell a given number of the shares of which it was the owner. The presumption is, without doubt, that the parties must have intended that which was legal rather than illegal, and their contract will be construed accordingly. But the presumption that the company intended to contract to sell a given number of the shares of which it was the owner when the contract was entered into does not necessarily follow.

The stock-jobbing act (Pub. Sts. *c.* 78, § 6) declares a contract for the sale or transfer of the stock of corporations like that of the defendant company to be void, unless the party contracting to sell or transfer the same is, at the time of making the contract, the owner, or has the control thereof. It is a well-recognized rule, that the adjudged construction of a statute, by a foreign state or country where it was enacted, is to be given to it when it is afterwards passed by the Legislature of another state or country. *Commonwealth* v. *Hartnett*, 3 Gray, 450. Before the stock-jobbing act of New York was enacted here, in substantially the same form as there, the courts of New York had decided that, if a person contracting to deliver stock at a future day, had stock in his possession or control when he made the contract, he was not obliged to keep the stock, or to deliver that identical stock, but that the contract could be performed by the delivery of any other shares of the same stock. *Frost* v. *Clarkson*, 7 Cowen, 24. A contract to sell shares owned by the company at the time the contract was made was not, as the plaintiff argues, the only possible legal contract. The party promising to deliver stock at a future time must, under the statute, be the owner or have the control of sufficient stock to fulfil his contract at the time the contract is made. It is not to sell the same shares, because the contract can be performed by the delivery of any other shares of the same stock. The presumption contended for by the plaintiff does not logically follow, that the company intended to contract to sell a given number of the shares of which it was

the owner.  The stock-jobbing act did not entitle the bearer of the convertible notes to receive any specific shares.  Nor did it compel the company to tie up its shares, to keep them idle and useless during the three years, to await the uncertain option of the holder of the notes.  The presumption seems to be contrary to that contended for by the plaintiff.  The statute created no duty and no obligation on the part of the company in relation to the stock held by its trustees when this contract was made. It created no express or implied trust that the stock should be held to respond to the demands of the holders of these notes.

The plaintiff argues, that, until the option was declared, the company was bound to keep itself in a position to carry out either of the promises contained in the notes, at the election of the holder.  The contract does not make this requirement. This case is not one where the option may be declared at any time, one where the company would be bound to hold itself in readiness to respond to the demand of the plaintiff every day and hour.  It specifies two days when the exchange shall be made, and carefully states that at no other times but upon those designated days can it be done.

The plaintiff argues that the contract could not have been intended to refer to shares to be thereafter issued, since it was made by the directors of the company, and that they had no power to make issues of stock, that power belonging to the stockholders of the company, (Pub. Sts. c. 106, § 34,) and such new issue, if made, under the Pub. Sts. c. 105, § 20, could only be disposed of by offering it to previous stockholders.  These propositions may be conceded.  The statutes have carefully provided for the disposition of new stock, and have marked out the manner in which it shall be distributed.  The contract could not have been intended to refer to such stock, upon the presumption that the parties must have intended that which is legal rather than illegal.

The plaintiff contends that the contract could not have intended to refer to stock to be purchased by the company; and that it was not competent for the company to deal in its own shares by buying and selling them in the market.  There may have been other ways in which provision could have been made by the company to comply with the requirement of this contract.

But is it material to inquire whether the company, at the time of making the contract, had then the means of possessing itself of the shares of its own stock, in order to deliver them in the future? Was not that question postponed to the time when they would be demanded, and the company be required, upon the option of the holder of the note, to deliver them? "The mode in which one party to a bargain shall enable himself to do what he has agreed to, is no concern of the other party, and is no part of the contract." *Bacon* v. *Parker*, 137 Mass. 309. The contract was legal; when it was entered into, the company had one method of fulfilling it, and this was sufficient. The holders of the notes must rest content until the time arrives when they can exercise their option, and demand the stock guaranteed to them.

In giving a construction to the contract contained in these convertible notes, as bearing upon the question whether the shares of stock held by the company when the contract was made became attached to and part thereof, the evidence in the case relating to the issue of notes of similar character in 1880 or 1881 is of some effect in showing the understanding of the parties as to this contract. The notes then issued contained the express provision that the holders thereof should have the right to convert them into any new issue of stock prior to a given date. The plaintiff held notes of this first issue, and knew of the right attached to them, and he also knew that the convertible notes of the issue we are now considering contained no such right. Both parties understood that the contract, by its written terms, gave the holder no such right as was contained in the first issue of notes. We do not think that we are empowered to write into the contract terms which neither party understood, at the making thereof, were any part of the same.

This case is not like that of *Price* v. *Minot*, 107 Mass. 49, where the undertaking of the defendant was in relation to three hundred shares of stock which he then held, and which he promised to hold for the plaintiff until the happening of a future and expected event, in the mean time, or a part thereof, the profit or dividend from the shares to belong to the plaintiff. In the case at bar, there was no appropriation of any specified stock to be used in fulfilling the contract named in the notes. At the time

the notes were issued, the plaintiff was not a stockholder under the contract, nor was he such when the new stock was issued. The contract he had made obligated the company to pay him a certain sum of money at the expiration of three years, with interest, as appeared by the coupons attached to the notes, or to exchange his notes for the stock of the company upon certain dates. During the time the notes were running, he was in no sense a stockholder, nor do we find, upon the facts, that he was an equitable stockholder. He had no vested right or title in any particular stock. His rights and interest as a stockholder of the company were postponed to the time when he should make his option and demand his stock. Pending this time, the contract gave him the right to payment of the coupons attached to the notes, and nothing more. Whether he would ever acquire interest in the stock of the company under his contract was conditional, and depended upon the event of his option, and until that was exercised he had no claim to any stock of the company. His contract did not attach to it the stock which the company held when the notes were issued. The convertible notes were independent of any particular, specified shares of stock, and the company held these shares free from any obligation expressed or implied in the contract. Each stood separate and alone, free from any rights or interests attaching the one to the other. The company could legally treat this stock as it saw fit. It could hold, sell, hypothecate, or lend it. Being subject to no trust, belonging absolutely to the company, it could hold and dispose of the same at its pleasure.

We do not find that the contract contained in these convertible notes gave the plaintiff any equitable interest in the stock of the company, held by trustees for its benefit and disposal; and that, in holding said stock, neither the trustees who held it for the company, nor the company, were clothed with any trust for the plaintiff in relation thereto.

*Decree dismissing the bill affirmed.*

*W. G. Russell & C. A. Prince*, for the plaintiff.
*E. R. Hoar*, (*J. E. Hudson* with him,) for the defendants.