HENRI SCHORESTENE, Plaintiff, *v.* ADRIAN ISELIN, Defendant.

*Offer to exchange stock of a railroad company formed by reorganization, for stock of the original company — failure to comply with the conditions of the offer.*

Iselin, who had purchased the property of a railroad company on foreclosure, published an offer to exchange stock in a new company which was to be organized, for such stock in the old company as should be deposited, before a date named, with a transfer and power of attorney signed in blank, in a certain trust company, which would issue receipts therefor. Schorestene, who had a certificate for stock in the old company in the name of James Champ, upon which there was a transfer and power of attorney in blank purporting to be signed by Champ, presented it to the trust company, before the expiration of the time stated in Iselin's offer, but the trust company declined to take it, saying it was not good.

Schorestene did nothing more until after the expiration of the time mentioned in the offer, and then brought an action against Iselin to recover damages for the breach of an express contract which he claimed had been created by Iselin's offer and by his acts.

*Held,* that the action was not maintainable;

That a contract with Iselin could be created only by a compliance with the terms of his offer, by depositing stock with the trust company and receiving its receipt therefor;

That the plaintiff's inability to comprehend the objection of the trust company to receiving the certificate without some proof of the genuineness of the signature of Champ on the back of it, which might have been obviated, did not excuse his *laches.*

MOTION by the plaintiff, Henri Schorestene, for a new trial, upon exceptions directed to be heard at the General Term in the first instance, by an order made at the New York Circuit on the 14th day of May, 1891, upon the dismissal of the complaint.

*J. Van V. Olcott,* for the plaintiff.

*Wheeler H. Peckham,* for the defendant.

O'BRIEN, J.:

On a trial at the close of plaintiff's case, the complaint was dismissed and certain exceptions of the plaintiff ordered to be heard in the first instance at the General Term.

Plaintiff sued for a breach of contract that he alleges was made between him and defendant.

Defendant, on October 31, 1885, advertised an offer in the following language:

" *To the stockholders of the Rochester and Pittsburg Railroad Company :*

" At the recent foreclosure sale, I purchased the property of the Rochester & Pittsburg Railroad Company, covered by its second mortgage. I have organized two companies, one in New York and one in Pennsylvania, and they are about to be consolidated. To such stockholders of the Rochester & Pittsburg Railroad Company as shall on or before the 20th day of November, 1885, deposit their certificates of stock, with transfer and power of attorney to transfer on the books signed in blank, with the Union Trust Company of New York, I will, upon the organization of such consolidated company, give one share of the common stock of such consolidated company for every four shares of the stock of said Rochester & Pittsburg Railroad Company so deposited, said Trust Company will give its receipt for stock so deposited as being deposited pursuant to this offer; and to be delivered to me, on receipt from me, for the depositor, of one share of such common stock of such new consolidated company for every four shares of Rochester & Pittsburg Railroad Company stock so deposited. In case if the stock of such consolidated company is not ready for delivery within forty days after the organization thereof, said depositors to have the right to withdraw the stock so deposited by them.

" The stock of such consolidated company will be six millions of dollars preferred six per cent. noncumulative stock, and six millions of dollars common stock.

" This offer is limited strictly to the stock deposited on or before the 20th November, 1885.

" The Union Trust Company will be prepared to receive deposits of stock on or after Nov. 6.

" *Oct.* 31, 1885.                    ADRIAN ISELIN."

Defendant, on December 14, 1885, advertised a further offer in the following language :

" New York, *December 14th,* 1885.
" *To the Stockholders of the Rochester and Pittsburg Railroad Company :*

" A considerable number of Rochester and Pittsburg stockholders having stated that they had not seen my circular on the 31st Octo-

ber, and have not, therefore, deposited their stock in accordance with its conditions, I have decided to give all outstanding stock-holders another opportunity to deposit their stock with the Union Trust Company, and receive therefor receipts entitling them to one share of stock of the consolidated reorganized company for every four shares deposited by them.

" This offer is limited strictly to the stock deposited on or before the 31st December, 1885.

"(Signed.) ADRIAN ISELIN."

The plaintiff, as shown by the testimony, never saw either of these notices until after December 31, 1885, but as the result of information received, either by himself personally, or by his brother from a broker, the brother, prior to December 31, 1885, took a certificate of stock for 100 shares, which was in the name of one James Champ, and upon the back of which was indorsed a transfer and power in blank purporting to be signed by James Champ, to the office of the defendant, and was there referred to the trust company. What then occurred at the trust company is thus detailed by the plaintiff's brother :

" I at once went, in accordance with this direction, to the office of the Union Trust Company and presented the same certificate to a clerk or employee at a window, made the same request, saying that I had been directed there by the office of Adrian Iselin to make the exchange in question. I handed the certificate through the window to this clerk, who took it, looked at it, went off with it to some other part of the office, and returned in a few minutes and pushed the certificate back to me through the window with the response that it was no good. To the best of my remembrance the words, ' This is no good,' were the words employed. I asked him to explain why, but he gave no intelligible explanation ; to the best of my remembrance merely stated that he had nothing to say about it ; it was no good. I thereupon took said certificate, came back to our office and locked it up in the safe."

This visit to the trust company he fixes at some time between the 10th and 20th of December, 1885 ; and from that time nothing was done by either the plaintiff or his brother until 1886, when, through the intervention of a friend and by letters directed personally to the defendant, the plaintiff sought to avail himself of the

terms of the offer, and his efforts having failed, this suit was commenced.

The plaintiff's theory is, that the offer presented by the published notices made a contract between the parties, and that for a breach thereof the defendant was liable in damages. Upon the theory, however, that the offer of the defendant and a strict compliance therewith by any stockholder would constitute a contract — which is doubtful — we fail, upon the testimony, to find evidence that the plaintiff complied with the terms of such offer. The offer was to give one share of the new stock for four shares of the old to such stockholders as should before the date fixed in the notice deposit their certificates of stock, with transfer and power of attorney, with the Union Trust Company of New York, for which the latter was to issue its receipts. The plaintiff failed to make the deposit within the time fixed; and the only justification for *laches* in this regard was his brother's inability to apprehend the objection of the trust company to receiving the certificate without some proof of the genuineness of the signature of Champ on the back of it. This objection of the trust company was capable of being intelligently communicated, and could then have been obviated by having the certificate transferred on the books of the company in plaintiff's own name, indorsing the same in blank and depositing it with the trust company. Instead, however, of doing this, or in fact of doing anything, the plaintiff allowed the time to go by, and, upon the theory that the defendant in some way was responsible for the action of the trust company, brought this suit to recover damages upon an express agreement.

From the reference already made to the testimony, we think that the error in this contention is manifest, for whatever grievance the plaintiff may have against the trust company, we fail to see how the defendant is to be held responsible therefor. The defendant's offer was to exchange the stock of the reorganized company for such stock as was deposited by holders, and for which they were to receive the receipts of the trust company. In the very nature of things it would have been impossible for the defendant to ascertain how many stockholders had deposited their stock or what amount of stock had been deposited, except from evidence furnished by the trustee, and while it is true that to some extent the trust company

became the agent of the defendant, this upon the facts here appearing, did not subject the defendant to liability in favor of the plaintiff. Undoubtedly had the offer been complied with and the stock deposited with the trust company, the latter, and perhaps the stockholders themselves, would have an action against the defendant. But where, as here, the stock was never deposited, and the omission so to deposit was due to the plaintiff's misapprehension of the exact terms of the offer and a failure to comply therewith, no contract was entered into between the parties, and no resultant action for damages would flow.

There are subsidiary questions presented by plaintiff's exceptions, but in view of the conclusion we have reached with respect to the main question, as to whether a contract arose out of the offer made by the defendant, and the subsequent conduct of the plaintiff, these need not be noticed. We think that the plaintiff could not acquire any right, either against the trust company or the defendant, unless by a precise acceptance of the offer within the time limited, and his failure to accept the terms and comply with the conditions of the offer — whether this was the result of misapprehension, inadvertence or neglect on his part — did not result in the meeting of the minds of the parties upon a definite proposition — did not result in the making of a contract between them — and gave no right to an action for damages to the plaintiff upon the theory of a breach of an express contract.

We think, therefore, that the exceptions should be overruled, and that judgment should be ordered upon the dismissal of the complaint in the court below, with costs and disbursements in the court below and upon this application.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Exceptions overruled and judgment ordered upon the dismissal of the complaint in the court below, with costs and disbursements in the court below and upon this application.