LISMAN et al. v. MILWAUKEE, L. S. & W. RY. CO. et al.

(Circuit Court, E. D. Wisconsin. April 10, 1908.)

1. RAILROADS—BONDS—PROVISION GIVING OPTION TO EXCHANGE FOR STOCK—NATURE OF CONTRACT.

A provision of a bond issued by a railroad company, giving the holder the right to exchange the same at par for stock of the company, is no part of the bond, but is a separate and independent contract, which does not affect the negotiability of the bond, but is not itself negotiable, and when it passes by assignment the assignee takes only the rights of the assignor. Being merely an unaccepted offer, it is strictly construed, and an acceptance, to be effectual, must be strictly within the terms of the offer.

2. SAME—RIGHTS OF HOLDER—SALE OF PROPERTY BY COMPANY.

A railroad company issued mortgage bonds running for 20 years and containing a provision giving the holder of any such bond the right to exchange the same at par for common stock of the company within 10 days after the date fixed for the payment of any dividend on such stock. Some years later another company purchased, by exchanging its own therefor, all of the stock of the company issuing the bonds, and the latter conveyed to it all of its property; the purchasing company assuming its debts, liabilities, and obligations. The road then became a part of the purchaser's system, the stock was retired, and no dividends were thereafter declared or paid thereon. The sale and purchase were authorized by a state statute which was in force when the bonds were issued. Held, that the option contained in the bonds must be presumed to have been given and accepted with reference to such statute, and that it imposed no duty on the company to continue a going concern or to pay dividends and no restriction upon its right to sell its property; that upon such sale and the consequent ceasing of dividends the right of a

holder of the bonds to exercise the option terminated and could not be enforced against the purchasing company.

3. SAME—ACTION FOR BREACH OF CONTRACT—DAMAGES.

The purchasing company being liable for the payment of the bonds, its refusal on demand of a holder to exchange stock therefor, conceding it to be a breach of the contract, would not entitle such holder to recover damages without proof that the stock was of greater value than the bonds.

4. SAME—OFFER TO CONTRACT—EXPIRATION BY LAPSE OF TIME.

The purchaser acquired the stock of the selling company by means of an offer made through certain brokers to exchange its own stock therefor, which offer was limited to a certain time. *Held*, that a holder of such bonds, conceding his right to exchange the same for stock of the issuing company under the option given therein, could not demand stock of the purchasing company in lieu thereof 13 years after the time fixed in its offer of exchange had expired.

## At Law.

This is a common-law action by the plaintiffs, as copartners, against the two companies above named, for damages growing out of the facts hereinafter stated. A jury was duly waived.

Concerning the facts there is little dispute. On or about the 1st of February, 1887, the Milwaukee, Lake Shore & Western Railway Company (hereinafter to be designated as the "Lake Shore Company") issued a series of 2,000 5 per cent. debenture bonds of $1,000 each, maturing February 1, 1907. The Central Trust Company of New York was named as obligee. The bonds were thereupon sold in the open market. The plaintiffs are the owners of three of such bonds, acquired for value and before maturity, and were such owners prior to and during the year 1906. Each bond contains the following stipulation:

"Said railway company agrees to transfer to the bearer at his option ten shares of one hundred dollars each of its common capital stock at any time within ten days after the date fixed for the payment of any dividend upon its common stock, upon the delivery to it in the city of New York of this bond and all unmatured coupons thereon in exchange for said stock, and thereupon this bond shall be canceled."

It was also provided that these debenture bonds should have the benefit of any later mortgage or trust deed executed by the Lake Shore Company, which stipulation reads as follows:

"Said railway company further agrees with whomsoever may be the owner and holder of this and all other bonds of this series, that no increased mortgage debt, excepting for the enlargement, improvement or extension of the company's property, shall be created without giving to the owner and holder of this bond equal security upon the same property with that given for such increased debt."

The present Lake Shore Company was organized and created by an amalgamation of two railway corporations theretofore existing; one being a corporation of the state of Michigan, and the other a corporation organized under the laws of the state of Wisconsin. The present corporation is organized and existing under the laws of both states and is operated and administered as a single organization with headquarters and general offices at Milwaukee, Wis. The Lake Shore Company duly operated its lines of railway until August, 1893, and for several years theretofore paid a dividend of 7 per cent. on its common stock annually.

In the latter part of the year 1891 and the early portion of 1892, the defendant Chicago & Northwestern Railway Company (hereinafter called the "Northwestern Company") acquired all the stock, both common and preferred, of the Lake Shore Company, and paid for the same by exchanging its own capital stock therefor on the following basis: Nine shares of preferred stock of the Lake Shore for ten shares of the common stock of the Northwestern Company; five shares of the common stock of the Lake Shore Company for four shares of the Northwestern Company common. The procedure adopted for such exchange was as follows: The Northwestern Company, through

certain brokers in New York, issued a circular letter addressed to the stockholders of the Lake Shore Company, whereby it proposed the exchange and limited the time therefor to the 1st day of February, 1892. By subsequent announcement addressed to stockholders, the time was enlarged until March 1, 1892.

On the 19th of August, 1893, the Lake Shore Company duly executed to the Northwestern Company a deed, whereby for the consideration of $100 it transferred and made over to said grantee all and singular its lines of railway, both in Michigan and Wisconsin, its right of way, rolling stock, buildings, lands, and franchises—except only the franchise to exist—and all other property of every name, nature, and description, wherever situate, subject, however, to the lien and charge of all existing mortgages or trust deeds covering any portion of said property, which the Northwestern Company thereby assumed and agreed to pay. The Northwestern Company by the terms of said deed also assumed all existing debts, liabilities, and obligations of the Lake Shore Company, and said assumption was therein expressed to be a part of the consideration for such transfer. Thereupon the Northwestern Company took possession of such property, and made public announcement that thereafter the railway lines of said Lake Shore Company would become an integral part of the Northwestern system. Ever since that time said Northwestern Company has operated such Lake Shore Railway lines as a part of its own system, known as the "Ashland Division." The certificates of stock of the Lake Shore Company so acquired by such transfer were, by order of the directors of the Northwestern Company, stamped with a rubber stamp by Mr. Hughitt as president: "Canceled, the property of the Chicago & Northwestern Railway Company." Since such transfer, the Lake Shore Company has never operated any railway or acquired any new or other property of any kind, and has never declared any dividend, and no date for a dividend has ever been fixed by it. The organization of such corporation has not been dissolved, but the corporation is still existent.

On February 1, 1889, the Lake Shore Company executed a certain deed of trust to the Central Trust Company of New York, whereby it did secure the payment of these debenture bonds, with certain other bonds, and thereby these debenture bonds became a part of the mortgage indebtedness of the Lake Shore Company. On the 8th day of August, 1906, plaintiffs tendered to the president and secretary of the Lake Shore Company these three debenture bonds with unmatured coupons attached, and demanded for each of said bonds 10 shares of the common stock of the Lake Shore Company, which exchange the officers of said company refused to make. Thereupon demand was made by plaintiffs upon the president and treasurer of the Northwestern Company, respectively, for 10 shares of the common stock of the Lake Shore Company for each of such bonds, which offer was refused. Thereupon demand was made of such officers that, in exchange for said three debenture bonds, the common stock of the Northwestern Company should be issued to them on the same basis as the exchange was made when the stock of the Lake Shore Company was acquired by the Northwestern Company, namely, four shares of Northwestern common for five shares of Lake Shore common, all of which demands were refused.

At the time such several demands were made, a share of the Northwestern Company common stock of $100 par value was worth $206 in the open market, and has since that time been worth as high as $220 per share. The claim of the plaintiffs is that, by such refusal to exchange their bonds for stock, they have sustained damages in the sum of $3,600, to recover which this suit is brought.

No question is raised as to the liability of the Northwestern Company to pay these bonds which were assumed as a part of the bonded indebtedness of the Lake Shore Company; but defendants deny any obligation to respond to the claim for damages under the conversion option based upon the speculative value of Northwestern stock. The defendants also set up the bar of the statute of limitation under sections 4221 and 4222 of the statutes of Wisconsin for 1898.

Vilas, Vilas & Freeman (Delos McCurdy, of counsel), for plaintiffs.
Edward M. Hyzer (Lloyd W. Bowers, of counsel), for defendant.

QUARLES, District Judge (after stating the facts as above). It is insisted by the defendants that the act of the Lake Shore Company in making a 20-year conversion contract was ultra vires because of a positive prohibition in the statutes of Michigan.

The Lake Shore Company came into existence as the result of an amalgamation of two independent railroad companies; one chartered under the laws of Michigan, and the other under the statutes of Wisconsin. The consolidated company received its franchises under the laws of both states, although but one general office was maintained, which was kept in the city of Milwaukee, Wis. It is contended that, as the Lake Shore Company owed fealty to two sovereigns, it could not ignore or disregard the prohibition of either; and that, while the laws of Wisconsin were silent on the subject of option contracts to convert bonds into stock, the statute of Michigan (Laws 1873, p. 528, No. 198, art. 2, § 38) provided:

"And the directors of any such company may confer on any holder of any such bond or obligation, the right to convert the same into stock of said company at any time not exceeding ten years from the date of said bonds, on such terms and under such regulations as the company may see fit to adopt."

It is contended therefore that the conversion clause in the debentures could not be operative beyond the 10-year period, and that therefore the demand in 1906 for conversion was nugatory. This is an interesting question, which is not free from doubt; but the view I have taken of the case renders it unnecessary to pass upon this point.

Defendants also contend that, as the debentures in question were issued for less than par, it makes the executory contract of the Lake Shore Company to exchange its stock for bonds on even terms illegal and unenforceable. This contention is predicated upon section 1753 of the Statutes of Wisconsin for 1898, and a similar statute in Michigan (section 6314, Comp. Laws 1897), which statutes have been strictly construed by the state courts. This question has been elaborately briefed and ably argued on both sides, but it is unnecessary to decide it in view of other features of the case, to which we will now pass.

Plaintiffs are the assignees of an executory contract which amounts to an irrevocable offer to exchange common stock for debenture bonds during a period of 20 years. This contract, although appearing upon the face of the debenture, is in fact a separate independent agreement. It is no part of the bond proper. Its purpose is not to secure the payment of money. Its presence does not affect the negotiability of the bond. Hotchkiss v. Bank, 21 Wall. (U. S.) 354, 22 L. Ed. 645; Welch v. Sage, 47 N. Y. 143, 7 Am. Rep. 423. Its invalidity would not impair the liability of the obligor to discharge the debt. Wood v. Whelen, 93 Ill. 154. It gains nothing in force by reason of its association with the stipulations of the bond. It must be construed as though embodied in a separate writing. It is not negotiable, and when it passes by assignment the assignee steps into the shoes of the assignor. Being merely an unaccepted offer, it is strictly construed by the courts. An acceptance, to be effectual, must comply implicitly with the very terms and all the terms of the offer, and time is held to be of the es-

sence. These propositions are emphasized by Mr. Justice Harlan in Waterman v. Banks, 144 U. S. 397, 12 Sup. Ct. 646, 36 L. Ed. 479, cited by defendants, and are discussed in Chaffee v. Middlesex Ry., 146 Mass. 224, 16 N. E. 34. Thus we have the general nature of the option contract which it is sought to enforce against the Northwestern Company by reason of its assumption of the "debts, obligations, and liabilities" of the Lake Shore Company.

Let us consider what are the terms of the offer which, under the authorities, must be implicitly complied with in case of acceptance. It was, in substance, a contract to transfer to the bearer at his option 10 shares of Lake Shore common at any time within 10 days after the date fixed for the payment of any dividend upon its common stock. Clearly, the obligation did not accrue, until and unless a dividend was declared. There can be no doubt of the right of the parties to impose this condition. Suppose there had been no sale of the railway, and the Lake Shore Company had remained in control during the 13-year interval, and then, after a demand and refusal in 1906, this suit had been brought against the Lake Shore Company. It is plain that there could have been no recovery without proof that a dividend period had been fixed for the common stock. It is conceded by counsel on both sides that by this contract the Lake Shore Company did not bind itself to declare any dividend at any time. The contract, with all its limitations and conditions, remains the same after assumption as before. The Northwestern Company simply stepped into the shoes of the original promisor. Lenz v. C. N. W. Ry., 111 Wis. 198, 203, 86 N. W. 607. Why must not the same inevitable result follow in the instant case?

But let us consider whether, as matter of law, the option contract survived the practical demise of the Lake Shore Company. The theory of the complaint is that this unaccepted offer is a continuing obligation which was assumed by the Northwestern Company, and which has been breached by the defendants by their refusal in 1906 to exchange Lake Shore common stock for the debentures of the plaintiffs, some 14 years after the purchase by the Northwestern Company of the stock and property of the Lake Shore Company. It would seem that such an offer extended to a bondholder was intended to confer merely a chance for speculation if and when exceptional market conditions should arise. Does it impose upon the company the necessity of being at all times during 20 years ready to meet and satisfy a demand thereunder? Is it dominant or subordinate? Is it to hamper and obstruct the policy of the management and to give the debenture holder a veto upon the action of the majority, or is the offer made subject to any lawful corporate management the directors may in their discretion adopt? Must the majority decline an advantageous sale of its property because of these outstanding options?

These questions have been considered by the courts to some extent. In Pratt v. American Bell Telephone Co., 141 Mass. 228, 5 N. E. 307, 55 Am. Rep. 465, the court say:

"The plaintiff argues that until the option was declared the company was bound to keep itself in a position to carry out either of the promises contained in the notes at the election of the holder. The contract does not make this

requirement. This case is not one where the option may be declared at any time, one which the company would be bound to hold itself in readiness to respond to the demand of the plaintiff every day and hour," etc.

In Day v. Worcester Ry., 151 Mass. 302, 307, 23 N. E. 824, the court was considering a similar option contract where there occurred a consolidation of the Nashua & Rochester Railway, the promisor, with another railway company. The court say:

"For the purposes of this decision we assume that the bonds did not import a contract by the Nashua & Rochester Railroad Company to continue in existence until they were satisfied, that the contract in the bonds to exchange them for stock was only binding so long as the Nashua & Rochester Railroad Company was in existence. * * * The argument for the defendant tacitly assumes that the Nashua Railroad Company has ceased to exist to all intents and purposes, and concludes that therefore there is no longer any obligation to deliver stock for bonds, a conclusion which would follow by the premise which we have conceded."

But the court held that under the Massachusetts statute the railroad company survived.

In Parkinson v. West End Company, 173 Mass. 446, 53 N. E. 891, the court had before it a case where they could pass definitely upon the proposition mooted in the earlier case above cited, and they hold:

"When an option is given to take stock, instead of receiving payment of a bond, the contract is not exactly what it was supposed to be in the argument of the plaintiff. Even when embodied in the contract, it imposes no restriction upon the obligor in regard to the issue of new stock, although the issue may be upon such terms as to diminish the value of the right. It leaves the management of the company in accordance with its other interests unhampered. It is simply an option to take stock as it may turn out to be when the times for choice arrives. The bondholder does not become a stockholder by his contract in equity any more than at law. Pratt v. American Bell Telephone Co., 141 Mass. 225, 5 N. E. 307, 55 Am. Rep. 465. So, if the corporation which made the bond finds it for its interest to go out of existence at or before the maturity of the obligation, the option given to the bondholder will not stand in the way. The option gives him merely a *spes*, not an undertaking that the corporation will continue for the purpose of making it good. This being so, we are not prepared to admit that, if the corporation should be dissolved at the time fixed for the bondholder's choice, we would be entitled to claim a proportionate share of the assets of the company. We do not decide the question, but we do not think it clear that the contract operates except in the event of the corporation happening to remain a going concern, so that the promise can be fulfilled in a literal sense by the delivery of a certificate of stock."

This case is very much in point, and presents features quite similar to the instant case. It will be noticed that Judge Holmes in the opinion considers and distinguishes the earlier cases in Massachusetts where consolidations were effected in such manner that the new company was regarded in law to all intents and purposes as identical with the original promisor. It will be observed, in this connection, that in the present case it was not a consolidation, but a purchase. The Lake Shore Railway became an integral part of a great railway system, and the original Lake Shore Company disappeared as a going concern, although preserving its franchise to exist. In short, the case does not present a similar statute or any of the features of the earlier Massachusetts cases upon the strength of which the option contract was held to survive the consolidation.

The same doctrine is announced in Tagart v. Railway, 29 Md. 557. It has several times been held, along the same line, that the holder of

a convertible bond has no ground to complain of an increase of authorized capital stock, although such new issue may lessen or destroy the value of the option. Pratt v. American Bell Telephone Co., 141 Mass. 225, 5 N. E. 307, 55 Am. Rep. 465. Upon such high authority it would appear that the Lake Shore Company might, in the interest of its stockholders, go out of existence without giving the holder of a convertible bond any just cause of complaint.

Let us state the doctrine in another way. Chapter 293, p. 237, of the Laws of 1883 of the state of Wisconsin, was in force in 1887, when these debentures were issued. It recognizes and sanctions the right of two independent railroad companies to amalgamate or consolidate in either of two ways: First, by means of a technical consolidation, by filing with the Secretary of State articles of consolidation, etc.; second, a purchase by one railway company of the stock of another when the two can be operated as a continuous line—that is to say, when they are not parallel or competing lines. The option contract in question must be held to have been made with reference to this antecedent legislation of which the bondholder had constructive notice, and therefore the option contract must be read as though the statute had been incorporated therein as a proviso contemplating a possible consolidation or purchase which might render an outstanding offer nugatory and impossible of performance. Walker v. Whitehead, 16 Wall. (U. S.) 314, 21 L. Ed. 357. In other words, the sale of the Lake Shore stock and property was a lawful step which presumably was within the contemplation of the parties when the conversion clause was inserted in the bond. In the sale and purchase both railway companies were acting within their strict legal rights to promote the interests of their respective stockholders. This change of ownership was only one of several vicissitudes liable to happen during 20 years in the life of the corporation, which might render the outstanding option valueless, and still afford no cause of action to the debenture holder. Nothing has taken place which the debenture holders were not bound to anticipate. Nugent v. Supervisors, 19 Wall. (U. S.) 241, 252, 22 L. Ed. 83. Any purchaser of railroad bonds is chargeable with notice of a statute authorizing a consolidation of railway companies and with the legal results flowing therefrom; among others, the right of the consolidated company to issue a new mortgage on the consolidated assets having priority over unsecured debentures of one of the consolidated companies. Tysen v. Wabash R. R. Co. (C. C.) 15 Fed. 763, 765. In the instant case, the debenture holders were bound to anticipate, not only that a consolidation or purchase under the Wisconsin statute might occur, but also that the practical collapse of the Lake Shore Company would probably follow. If thereby the hope of speculative venture on the stock market was extinguished, it is damnum absque injuria.

Two results followed the lawful act of the Lake Shore Company in disposing of its assets and franchise: First, the impossibility of any dividend period which by the terms of the offer was a condition to the ripening of the obligation; and, second, every share of its capital stock had been merged in the existence of the purchasing corporation. The old stock certificates were held by the Northwestern Company,

but the stock as distinguished from the certificates had been absorbed and had reappeared upon the stock market as shares in the Northwestern Company. Every dollar of its assets was thus represented, every share of stock reincorporated, and nothing of value remained to support a further issue of Lake Shore stock. This state of facts constituted a complete legal impediment to performance. This condition had existed for more than a year before the deed was executed (August 13, 1893), whereby the Northwestern Company assumed the "debts, liabilities, and obligations" of its grantor. The former officers of the company conducted the railway until September 1, 1893; but it was a railway with only one stockholder, and pending the transition period no new Lake Shore stock could have been issued. It required only a formal transfer of tangible assets, supported by a nominal consideration, to make the public record correspond with the stock books. Rosenkrans v. La Fayette Ry. (C. C.) 18 Fed. 513–516.

Under the reasoning of the cases cited, the option contract perished by operation of law before the Northwestern Company actually took over the management. Laying aside technical considerations, it must be apparent that all hope of speculative venture under the option was extinguished when the stock ceased to represent any value and had been withdrawn from the market; the stock certificates being stored away as a memento of a defunct enterprise.

Much ingenuity has been shown by counsel in construing the legend of the rubber stamp impressed on each certificate: "Canceled, the property of the Chicago & Northwestern Railway Company." In my judgment it should be read as an epitaph which indicated who had lawful custody of the remains. The demise having taken place in 1893, all efforts at resuscitation in 1906 must prove unavailing.

It is nevertheless insisted in argument that the Northwestern Company has rendered performance impossible and therefore must respond. This point is not well taken, as no fraud or deception is charged. Cooley on Torts, 497; Boyson v. Thorn, 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; McCann v. Wolff, 28 Mo. App. 447; Walker v. Cronin, 107 Mass. 555; Angle v. C., M. & S. P. Ry., 151 U. S. 1–14, 14 Sup. Ct. 240, 38 L. Ed. 55.

Let us now concede, for the purposes of argument, that the option contract survived the collapse of the Lake Shore Company and was duly assumed by the Northwestern Company as a continuing obligation; and, further, that performance was rendered impossible by the voluntary acts of both railroad companies. The breach alleged was in 1906, and consisted in refusal to deliver common stock of the Lake Shore Company, the only thing that the plaintiffs could rightfully demand by the terms of the contract. We have already seen that in assuming the contract the Northwestern Company is not otherwise obligated than was the original promisor, namely, to furnish ten shares of Lake Shore common in exchange for one of those convertible bonds. What would be the measure of damages in such case? Ordinarily, it would be predicated upon the value of Lake Shore stock at the time of the breach. There is no specific evidence on this point. In the nature of the case there would be no substantial damages unless ten shares of common stock were

then worth more than one of these debentures. There is sufficient evidence to show that no such claim could be made for the Lake Shore stock, so that this cause of action breaks down, unless plaintiffs have shown themselves entitled to stock of the Northwestern Company whose market value would furnish a basis of recovery.

Now, to simplify this proposition: Suppose plaintiffs, pursuant to their demand, had obtained their quota of the stock of the Lake Shore Company. Upon what principle rests the supposed liability of the Northwestern Company to exchange its own stock therefor in 1906? No such contract is in proof. It is, however, assumed that the proposition made by the Northwestern Company in 1892 to exchange its own stock for the Lake Shore stock on the basis of four to five was still open and available. Such conclusion is untenable:

First. Because it appears by the evidence that the proposition so made by the Northwestern Company in 1892 was extended to the stockholders of the Lake Shore Company and to none others. The holders of convertible bonds were not stockholders. They were creditors. They had neither a legal nor equitable interest in the stock. Pratt v. American Bell Telephone Co., 141 Mass. 225, 230, 5 N. E. 307, 55 Am. Rep. 465. It is well settled that any such proposition can be accepted only by the class of persons to whom it is expressly made. Indianapolis Ry. v. Miller, 71 Ill. 463.

Second. The proposal was expressly limited as to time. The proposition in question was communicated through the instrumentality of certain brokers in New York City to the stockholders, and by its terms expressly expired on the 1st day of February, 1892. In Schorestene v. Iselin, 69 Hun, 250, 23 N. Y. Supp. 557, a similar proposition was made to stockholders of a railway that had been purchased on foreclosure sale by Iselin. Action was brought for damages for failure to exchange stock of plaintiff after the date fixed in the proposition. It was held that no action accrued unless by virtue of a precise acceptance of the offer within the time limited. The same strictness is observed as to the time limited in the offer. Eliason v. Henshaw, 4 Wheat. (U. S.) 225, 4 L. Ed. 556; Cummings v. Realty Co., 86 Wis. 384, 57 N. W. 43. There is no authority, precedent, or principle by which the time can be extended without the consent of the party making the offer. Potts v. Whitehead, 20 N. J. Eq. 55, 59. The relative value of the shares of the two railway companies must have been arrived at in 1892, by carefully balancing the considerations affecting values as they then existed. It would be highly unreasonable, even if the court had the power, to hold the Northwestern Company irrevocably bound for 14 years by its valuation in 1892. It is a matter of common knowledge that the fluctuations in railway stocks might in a few days render the former valuations inequitable and unreasonable. Tagart v. Railway Co., 29 Md. 569.

There was no contract obligation on the part of the Northwestern Railway Company to purchase Lake Shore stock in 1906 upon any basis, and the court is powerless to supply such obligation. As we have seen, there is no evidence which furnishes a cause of action in tort. For these reasons the plaintiff cannot recover in this action.

Suitable findings may be prepared in accordance with this opinion.