JOHN PARKINSON *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.    March 31, 1899. — May 19, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Corporation — Rights of Bondholder having Option to take Stock instead of Payment of Bond — Effect of Consolidation with another Corporation — Liability of Purchasing Corporation to such Bondholder.*

After a street railway corporation had issued bonds, which were not convertible into stock upon their face, the corporation was authorized to increase its stock by a statute, which provided that a certain amount "of said stock shall be applied to the payment or redemption of" certain bonds, including those in question, "and the issue of said bonds is hereby legalized and made valid, and the holders thereof may convert them into stock as said bonds mature." The corporation voted to issue the new stock, but before it had issued the stock appropriated to this set of bonds it consolidated with another corporation under a statute making the new corporation "subject to all the duties, restrictions, and liabilities" to which the old one was subject. The stock for these bonds never was issued. Subsequently the new corporation was bought up by another corporation under a statute making the latter subject to "all the duties, restrictions, and liabilities" of the selling corporation. *Held*, that a holder of the bonds issued by the first named corporation could not maintain an action against the purchasing corporation for a refusal to deliver its preferred stock for such bonds at maturity.

CONTRACT, by the holder of five bonds of the Highland Street Railway Company, to recover damages for the defendant's refu-

sal to deliver its preferred stock in exchange for such bonds at maturity. The case was submitted to this court upon an agreed statement of facts, the material parts of which appear in the opinion.

If the plaintiff was entitled to recover, judgment was to be entered for him in such sum as, in the opinion of the court, he was entitled to recover, or the case was to be sent to an assessor; otherwise, judgment was to be entered for the defendant.

*R. Olney & C. K. Cobb*, for the plaintiff.

*F. E. Snow*, for the defendant.

HOLMES, J.   This is an action to recover damages for a refusal to deliver preferred stock of the defendant road to the holder of certain bonds of the Highland Street Railway, upon demand at maturity. The bonds are not convertible into stock upon their face, but after they were issued the Highland Street Railway was " authorized " to increase its stock to a million dollars, by St. 1879, c. 151, and by § 2 of the act it was provided that " three hundred thousand dollars of said stock shall be applied to the payment or redemption of " certain bonds, including these, " and the issue of said bonds is hereby legalized and made valid, and the holders thereof may convert them into stock as said bonds mature." The company voted to issue the new stock, but before it had issued the stock appropriated to this set of bonds, it consolidated with the Middlesex Street Railway, under St. 1886, c. 229, the new company being " subject to all the duties, restrictions, and liabilities" to which the old one was subject. The stock for these bonds never was issued. Subsequently this new company was bought up by the defendant corporation, under St. 1887, c. 413, the defendant being subject to " all the duties, restrictions, and liabilities " of the selling company.

The plaintiff's claim is based upon the above mentioned St. 1879, c. 151, and the cases of *John Hancock Ins. Co.* v. *Worcester, Nashua, & Rochester Railroad*, 149 Mass. 214, and *Day* v. *Worcester, Nashua, & Rochester Railroad*, 151 Mass. 302. But those decisions, even in the minds of the judges who agreed with them, as not all the judges did, went to the verge of the law. I think myself that they were decided rightly, but that the decision depended on the peculiar intimacy of the corporations united, and

the fact that the consolidation was little more than a formal step. It follows that, while we assume that the language of the consolidating acts is sufficient to give the plaintiff the right he claims, if that construction seems reasonable under the circumstances, still the question whether that construction is reasonable is a serious question, and is not disposed of by the decisions upon which the plaintiff relies.

When an option is given to take stock instead of receiving payment of a bond, the contract is not exactly what it was supposed to be in the argument for the plaintiff. Even when embodied in the contract, it imposes no restriction upon the obligor in regard to the issue of new stock, although the issue may be upon such terms as to diminish the value of the right. It leaves the management of the company in accordance with its other interests unhampered. It is simply an option to take stock as the stock may turn out to be when the time for choice arrives. The bondholder does not become a stockholder by his contract in equity any more than at law. *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225. So, if the corporation which made the bond finds it for its interest to go out of existence at or before the maturity of the obligation, the option given to the bondholder will not stand in the way. The option gives him merely a *spes*, not an undertaking that the corporation will continue for the purpose of making it good. This being so, we are not prepared to admit that, if the corporation should be dissolved at the time fixed for the bondholder's choice, he would be entitled to claim a proportionate share of the assets of the company. We do not decide the question, but we do not think it clear that the contract operates except in the event of the corporation happening to remain a going concern, so that the promise can be fulfilled in a literal sense by the delivery of a certificate of stock.

However this may be, the contract does not prevent the corporation from consolidating with another in such a way as to make performance impossible, any more than it prevents the issue of new stock in such a way as to make performance valueless. Still more clearly is this true when, as here, the right to take stock is created, not by a contract of the company, but by a subsequent act of the Legislature, and is a pure gratuity as between the company and the obligee. The bondholder's right, if he had

one, is subject to the condition that the corporation shall not
have vanished in such a way that to enforce the option mani-
festly would run counter to the legislative plan. It is unin-
structive to say that the consolidations preserve all obligations.
The question is whether this obligation is not of such a nature
that by its own terms it ceases to operate in the event which
has happened. In this case, as in so many others, the general
principles involved are reconcilable with either result, and the
decision really turns upon the particular facts. The case of the
Worcester, Nashua, and Rochester Railroad was an exception,
not an illustration of a general rule. A consolidation which
makes no arrangement for furnishing stock in the new company,
and which ends the existence of the old ones, as a general rule
may be presumed to put an end to the right of bondholders
to call for stock, not because the law has not machinery for
keeping such a right alive, but because, not being bound to do
so, it has made dispositions which manifestly take no account
of the right.

Perhaps we rather should say, not that the present case is to
be decided on the particular facts, but that it is to be decided on
the absence of particular facts, such as in the other cases were
thought to show that the scheme of union contemplated the
plaintiff's demand. Leaving on one side the first consolidation
between the Highland and Middlesex roads, the second one, by
which the West End bought up the consolidated road and others,
was to be effected by exchanging the preferred stock of the
West End for the stock of these roads, whereupon the rights
and liabilities of the other roads were to be transferred to the
West End. Or the preferred stock might be sold for cash for
the purchase of the same property, first offering it to the West
End stockholders at par, as usual when stock is increased. The
preferred stock could be used for no other purposes. The West
End was authorized to issue an amount of preferred stock equal
to the stock of these roads, and no more. The West End was a
stranger to the Highland Street road. The consolidation was
under an act applicable to all the Boston roads. Every circum-
stance of intimate connection which was relied on in the other
cases, and which it is unnecessary to repeat, (see 151 Mass. 309,
310,) was wanting here. The equality between the shares of

both the old corporations and the new stock, which, although a slight matter perhaps, pointed to the consolidation making as little change as possible, is absent. The demand by the holder of the bonds was for $100\frac{168}{544}$ shares.

We do not mean to change or qualify the general views expressed in the former cases, but we are driven to the conclusion that in the case at bar there is no indication that the Legislature, when it authorized this consolidation, kept the identity of the Highland Street Railway so far alive under an altered name as to impose on the West End the duty of giving its preferred stock in a different ratio for the Highland Street bonds, when it imposed no such duty upon the West End toward the stockholders of the consolidated road, and expressly limited the uses of the West End preferred stock to purposes of which this was not one. It simply has extinguished the Highland Street Railway in this respect, and that is an act of which the plaintiff cannot complain.                    *Judgment for the defendant.*