## SLATER TRUST CO. v. RANDOLPH-MACON COAL CO. et al.

(Circuit Court, S. D. New York.   June 9, 1908.)

No. 1.213.

1. MORTGAGES (§ 134*)—CONSTRUCTION—TITLE OF MORTGAGOR—COVENANT THAT MORTGAGOR IS "OWNER" OF PROPERTY.

A covenant in a mortgage of real estate that the mortgagor is the "owner" is one that he is the absolute owner in fee simple.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 134.*]

2. CORPORATIONS (§ 306*)—LIABILITY OF DIRECTORS TO THIRD PERSONS—FRAUDULENT REPRESENTATIONS IN MORTGAGE.

The sale by a corporation of its bonds of an issue of $3,000,000 secured by a mortgage of lands described amounting to over 47,000 acres, of which it covenanted that it was the owner when in fact it owned in fee simple only 735 acres, was a fraud on purchasers of the bonds which will support a suit against the officers of the corporation chargeable with such fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1457; Dec. Dig. § 306.*]

3. EQUITY (§ 51*)—JURISDICTION—PREVENTING MULTIPLICITY OF SUITS.

Equity has jurisdiction of such a suit brought by one holder of a small number of such bonds on behalf of itself and all other holders similarly situated. on the ground of preventing a multiplicity of suits, where the bill alleges that the bonds were sold in the open market at prices averaging 90 per cent. of their par value, that the mortgage security is in fact insufficient to give them any market value, and that complainant bought in reliance on such fraudulent representations made in the mortgage, it being a fair inference from such facts that other purchasers did likewise.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 167; Dec. Dig. § 51.*]

4. CORPORATIONS (§ 306*)—LIABILITY OF DIRECTORS—ACTION BY BONDHOLDERS FOR FRAUD—DEFENSES.

Provisions in a mortgage executed by a corporation to secure an issue of bonds that no bondholder shall have the right to institute a suit thereon for any purpose unless demand shall have first been made on the trustee by the holders of at least one-fourth in amount of the bonds outstanding cannot preclude a bondholder from bringing suit on behalf of himself and all others similarly situated against the directors based on fraudulent representations made in the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1457; Dec. Dig. § 306.*]

5. COURTS (§ 309*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—INDISPENSABLE PARTIES.

Where the real controversy in a suit in a federal court is between citizens of different states who are in court, inability to make service upon another party named by the complainant as a defendant, whose

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interest is merely ministerial, will not deprive the court of jurisdiction under Rev. St. § 737 (U. S. Comp. St. 1901, p. 587).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 857; Dec. Dig. § 309.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

6. EQUITY (§ 94*) — PARTIES — DEFENDANTS WHO MUST BE JOINED — SUIT AGAINST DIRECTORS OF CORPORATION.

To a suit in equity by bondholders of a corporation against the directors, to compel them to make good false representations made in the mortgage securing the bonds alleged to have been fraudulently authorized by them, the corporation is not an indispensable party defendant, and the fact that it cannot be brought into court in the district of suit in which the defendant directors reside, and refuses to appear voluntarily, will not deprive the court of jurisdiction to grant relief against the defendants served.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 252; Dec. Dig. § 94.*]

In Equity.

Delmas, Towne & Spellman, for complainant.

Carter, Ledyard & Milburn, for defendant Hegeman.

Strong & Cadwalader, for defendant Read.

Joline, Larkin & Rathbone, for defendant Central Trust Co.

Rushmore, Bisbee, Rogers & Stern, for defendant Gardiner.

MARTIN, District Judge. The defendant Randolph-Macon Company is not in court, the attempted service on that defendant having been set aside by order of court. All the other defendants are in court, and each has demurred. They assert: First. That the complaint fails to state facts sufficient to constitute a cause of action. Second. That the complainant has a plain, adequate, complete, and compensatory remedy at law. Third. That the defendant Randolph-Macon Coal Company is a necessary party for the determination of this controversy.

The allegations of the bill are in brief as follows: That the complainant bought, for a valuable consideration, and is the owner of, five bonds of $1,000 each issued by the Randolph-Macon Coal Company, and brings suit on behalf of itself and "all other bondholders similarly situated" against said coal company, and against James T. Gardiner, William A. Read, John R. Hegeman, and the Central Trust Company; that in the year 1905 said coal company, in order to issue $3,000,000 of bonds, made a mortgage to the Central Trust Company of over 47,000 acres of land, representing and covenanting that the said coal company was the owner of said property; that the execution of said mortgage, and the statement therein that said coal company was the owner of said lands, and all other statements in said mortgage, was authorized by the defendants Gardiner, Read, and Hegeman, who were members of the board of directors of said coal company; that the representation that said coal company was the owner of said land was false, and known to be false by the said

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Gardiner, Read, and Hegeman, who authorized it; that it was made fraudulently, for the purpose of inducing innocent parties to purchase said bonds; that various parties, relying upon said representation, did purchase $1,800,000 of the issue of said bonds; that the said coal company was not in fact the owner of 47,000 acres of land, but of only a little over 734 acres; that because the company owns such a small amount of land, its assets and earnings are insufficient to meet its interest obligations, and said bonds have become worthless, which would not have happened if the representation as to ownership of 47,-000 acres had been true; that the plaintiff bought these bonds relying upon said representations of the defendants, and is one of the victims of said defendants' deception, and prays that said coal company and the defendants Gardiner, Read, and Hegeman be decreed to make good their representations and covenant by transferring the title of the property to the original trustee, or, if that cannot be done, to pay over to said trustee a sufficient sum of money as a substitute security.

First. All of the defendants, in support of their various demurrers, urge that said complaint is insufficient, in that the facts alleged do not state a cause of action, because the complainant's charge of fraud as to the mortgage, which mortgage is referred to in the complaint, a copy being attached thereto, is disproved by the mortgage itself. Under the pleadings the demurring defendants do not deny that the said coal company in fact owned the fee to only 734.82 acres of land at the time of the execution of said mortgage; that in all above that amount up to the 47,592.34 acres, as set forth in the complaint, the said coal company owned only some rights for mining coal, but they claim that the language of various clauses in the mortgage does not represent that the said company owned the fee in more land than said 734.82 acres; that said mortgage refers to various deeds that the said coal company had received from divers parties, and that the only representation or covenant as to ownership of the property contained in said mortgage is that the coal company owned the property rights, wherever they were, which were conveyed to it by these various deeds; that the mortgage does not set forth any particular number of acres as constituting the holdings of the company; that in the various clauses in said mortgage describing different tracts of land words like the following are used:

"And the lands and premises and rights and interests thereto lately of the Bolen-Darnall Coal Co. more particularly described in a certain deed thereof from said Bolen-Darnall Coal Co. to said Coal Co., which deed is dated February 11, 1905, and recorded in the office of the Recorder of Randolph County in Book 77 of Deeds, page 165"

—without any representation as to the number of acres, but it will be observed that in the first description given these words are used:

"And the company for itself, its successors and assigns, covenants and agrees to and with the trustees and their successors, and to and with each and every person or persons, firm or firms, corporation or corporations, who or which shall at any time own or hold any of the bonds secured hereby (the expression 'holder of any of the bonds secured hereby' or any like expression whenever hereinafter used is intended to include each and every

such person, firm and corporation) that the company is at the time of the execution of these presents the owner of the property hereby mortgaged—except such of the same as shall  *  *  *  be hereafter acquired by the company *  *  *  and that the company has full power and authority to grant, bargain, sell, convey, assign, transfer the same, except as aforesaid, and that the same are free and unincumbered of any claim whatsoever except as aforesaid, and that the company will warrant and forever defend to the trustees and their successors, and to any owner or holder of any of the bonds secured hereby, whether against the company or against any other corporation or person whatsoever claiming or to claim the same, all of the property hereby mortgaged or intended to be."

The exception above noted only refers to after-acquired property.

This mortgage asserts that the Randolph-Macon Coal Company was the owner of all the property therein described. An owner is one who has domain of a thing which he has a right to enjoy and to do with as he pleases. Bouvier illustrates as follows:

"Thus the absolute owner of an estate, that is, an owner in fee, may cut the wood, demolish the buildings, build new ones, and dig wherever he may deem proper for minerals, stone, plaster, and similar things, which would be considered waste and would not be allowed in a qualified owner of the estate, as a lessee or a tenant for life. The word 'owner,' when used alone, imports an absolute owner."

As I read this mortgage, there is a covenant of absolute ownership of all the property described. The words "rights and interests therein and thereto," so frequently used in the mortgage, read in connection with this covenant of ownership, strengthen rather than weaken the construction of this mortgage that the coal company was the owner in fee of all the land covered by it; or, in other words, it was intended to mean that the said coal company was the owner of said lands and premises, with all the rights and interests thereto belonging. The first indenture provides that said company shall "thereafter execute and deliver to the trustees a further and supplemental deed conveying all the lands and premises, rights and interests in and by said indenture of February 1, 1905, mortgaged, or intended so to be, by fuller and more specific description thereof," and said coal company did execute a supplemental mortgage deed; and in it there are specific references to deeds to the coal company, including references to the number of acres conveyed by the various deeds of the coal company, from which may be computed the number of acres set forth in the bill of complaint.

The covenants of the supplemental deed are as follows:

"It being the intention of this instrument to convey to the trustees all the right, title and interest of the company, of whatever nature such interest may be, in, of and to said lands, and each and every parcel thereof, as well as in, of or to any other real estate now belonging to the company, whether the same be specifically described or not, together with all and every the tenements, hereditaments, fixtures, rights, easements, leases, leaseholds, rights of way, licenses and privileges thereto, belonging or in any wise appertaining, as well as all and every authority to enter upon, use and enjoy any lands to the full extent that the company has hitherto used, owned, employed or enjoyed the same, or which it or its grantors has or have heretofore claimed or which it now claims the right to convey, own, use, employ or enjoy.

"To have and to hold, all of the property and rights and interests therein and thereto hereinbefore described together with all the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining,

to the trustees, their successor or successors, and their assigns forever, upon the same trusts, and for the same purposes, as at large set forth in the said indenture dated February 1, 1905, which the company does hereby in all things confirm; this indenture being executed for the purpose of more definitely and precisely describing the premises by said indenture of February 1, 1905, conveyed, and by this indenture conveyed and confirmed."

This not only refers to the former mortgage deed, but in all things confirmed the same, and is executed for a more definite and precise description of the premises, not for the purpose of limiting the application of the word "owner" in the first covenant.

A person examining this mortgage, having in mind that bonds to the amount of $3,000,000 were to be issued thereon, would, in my opinion, be fully justified in understanding that this mortgage was intended to cover, and did cover, over 47,000 acres of land, which said coal company was the owner of in fee, and that the officers of the company intended that this mortgage should be so understood and construed, and if it be true, as alleged in the complaint, that said company owned the fee to only 734.82 acres of land, there was fraud and deception practiced upon the purchasers of these bonds.

Second. The demurring defendants claim there is an adequate remedy at law; that the complainant's prayer for specific performance is beyond the power of the court to grant, as the facts set forth in the complaint are to the effect that said coal company did not own in fee but 734.82 acres of land at the time of the execution of the mortgage, and has not since acquired the fee to any more of the land in question; that there is no sense in a court of equity taking jurisdiction of a cause to afford a relief that it has no power to decree; that if the defendants did not own the fee at the time of the execution of the mortgage, and have not obtained it since, it is impossible to decree specific performance.

I concur in the defendant's contention that the court cannot order said coal company to purchase the fee to nearly 47,000 acres of land for the benefit of the bondholders, but query whether the court may not direct the officers who perpetrated this fraud to provide an equivalent security. This bill is brought by the Slater Trust Company of Rhode Island on behalf of itself as a bondholder, and "for all other bondholders similarly situated." It further alleges that the board of directors unanimously authorized and approved the execution of the mortgage covering 47,592.39 acres of land when it, in fact, owned but 734.82 acres of land, and, well knowing that fact—

"purposely and fraudulently caused and authorized said false statements, representations, and covenants to be made and incorporated in said original mortgage and in said supplemental mortgages, with the intent and for the purpose of thereby inducing innocent persons, in ignorance of the truth, to rely upon said statements, representations and covenants, and, relying thereon, to purchase the bonds hereinabove referred to, secured by said original and supplemental mortgages"—

that the complainant purchased and became the owner of five $1,000 bonds, relying upon the representations of said directors as being true; that—

"as a result of the false and fraudulent statements, representations, and covenants hereinabove mentioned, and the reliance of the public thereon, the

said Randolph-Macon Coal Company, acting therein through said defendants Gardiner, Read, and Hegeman, have been able, through the trustees as aforesaid, to dispose of and sell, and have disposed of and sold in open market, 1,800 of the 3,000 bonds aforesaid, at a price averaging 90% of the face value of said bonds, and have received and appropriated to their own use the proceeds of said sales. By reason of the fact that the aforesaid statements, representations, and covenants were false, the said Randolph-Macon Coal Company has been unable to meet or pay the interest upon the 1,800 bonds thus disposed of, which became due on the 1st day of February, 1907. * * * By reason of the premises, the value of the bonds held by your orator as aforesaid, and of all of the bonds issued by said Randolph-Macon Coal Company as aforesaid, has depreciated until said bonds are * * * not salable in the market, etc. Had the statements, representations, and covenants aforesaid been true, the property covered by said mortgages would have been of far greater value than the amount of the bonds authorized by said Randolph-Macon Coal Company to be issued. * * *

"Prior to the filing of this bill, and after the resignation and withdrawal of said William E. Fisse as trustee as aforesaid, your orator, on behalf of himself and of all bondholders of the Randolph-Macon Coal Company similarly situated as himself, applied to said Central Trust Company of New York, as sole trustee under the said original mortgage and the said supplemental mortgages, and requested it, for the protection of itself and of said bondholders, to institute this action, or any other suit which would have for its object and purpose to secure for the benefit of itself and of said bondholders the benefit of the aforesaid statements, representations, and covenants contained in said original mortgage and in said supplemental mortgages, but said Central Trust Company of New York refused to institute against said Randolph-Macon Coal Company and said Gardiner, Read, and Hegeman, or any of them, any such or other suit or action whatsoever."

These allegations amount to this: The complainant bought and owns 5 out of the 1,800 bonds issued by the defendant. Other parties have bought 1,795 of these bonds. If there is an adequate remedy at law, it must be through a multiplicity of suits. The defendants say:

"Complainant's hollow pretext for coming into equity because the suit is nominally in behalf of all other bondholders similarly situated will not sustain this suit in equity in so far as it is based on fraud, for the bill does not allege that any other bondholder than complainant was deceived by fraudulent representation, or purchased bonds in reliance thereon."

I do not regard such an allegation essential as bearing upon the question of equity jurisdiction in avoiding a multiplicity of suits. It stands to reason that the other bondholders must have relied on the allegation of ownership set out in the mortgage, or they would not have parted with their money. Upon the consideration of such a question, the court should not require the petitioner to aver facts which at most would be upon information and belief, and which information and belief must be founded upon conclusions that are self-evident to the court from the facts pleaded.

The defendants further claim that:

"If this suit be regarded as one brought to enforce in favor of all the bondholders rights which ought to be asserted by the trustee, complainant has failed to allege compliance with the conditions precedent to the maintenance of such suit contained in the mortgage, which provides:

"'No holder or holders of any of the said bonds or coupons shall have the right to institute any suit, action or proceeding at law or in equity for the

foreclosure of this mortgage, or for the execution of the trusts hereby created or for the appointment of a receiver or to resort to any other legal or equitable remedy under this mortgage, without first giving notice in writing to the trustees of the fact that such default has occurred and continued as herein provided, and unless the holders of at least one-quarter in amount of the said bonds outstanding shall in writing have requested the trustees, and shall have afforded a reasonable opportunity to the trustees to exercise the powers herein created or to institute such suit, action or proceeding in its own name, or unless also they shall have offered to the trustees adequate security and indemnity against the costs, expenses and liabilities to be thus incurred by the trustees. Such notification, request and offer of indemnity are hereby declared in every such case, at the option of the trustees, to be conditions precedent to the execution of the powers and trusts of this mortgage and to any action or cause of action for foreclosure or for the appointment of a receiver or for any other remedy hereunder, it being understood and intended that no one or more holders of bonds shall have any right in any manner whatever to affect, disturb or prejudice the lien of this mortgage by his. her or their action, or to enforce any right hereunder, except in the manner herein provided, but that all proceedings at law or in equity hereunder shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of outstanding bonds. Except as herein otherwise expressly provided, any remedy herein conferred upon the trustees or the holder of any bond secured hereby is not intended to be exclusive of any other remedy; but each and every such remedy shall be cumulative and in addition to every other remedy given hereunder or existing at law, in equity, or by statute.' "

This clause relates to foreclosure proceedings, the execution of trusts, the appointment of a receiver, or other like legal or equitable remedies. No language used in declaring, describing, or limiting the rights and remedies, legal or equitable, of parties to this, or similar, contracts, should be presumed or construed by the court to have been designed to limit the right of redress for fraud and deceit, or to provide immunity or to enlarge the field of escape to the perpetrators of such fraud and deceit. Whatever presumption arises, it must be upon the theory that the language was intended to define redress for failure to perform under the contract, but not to limit the processes to which the victims of fraud may resort for relief. I hold that this direct proceeding in equity in favor of the complainant and all others similarly situated will save time, expense, and a multiplicity of suits, and settle finally the rights of all these bondholders who may choose to interplead as against these individual defendants who are charged with fraud, and that the court of equity has a broader and more efficient field for relief and mode of obtaining it, and may be more efficient in the remedy, than a court of law.

Third. The demurring defendants contend that the Randolph-Macon Coal Company is an indispensable party defendant.

Rev. St. U. S. § 737 (U. S. Comp. St. 1901, p. 587), provides as follows:

"When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and nonjoinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

The general rule on this subject is well stated by Justice Bradley, in Williams v. Bankhead, 19 Wall. 571, 22 L. Ed. 184. He says:

"The general rule as to parties in chancery is that all ought to be made parties who are interested in the controversy, in order that there may be an end of litigation. But there are qualifications of this rule arising out of public policy and the necessities of particular cases. The true distinction appears to be as follows: First. When a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Secondly. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party, if possible, and the court will not proceed to a decree without him, if he can be reached. Thirdly. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter, which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant."

Where the real controversy is between citizens of different states who are in court, inability to make service upon another party named by the complainant as a defendant, whose interest is merely ministerial, will not deprive the federal court of jurisdiction. Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; McNutt v. Bland, 2 How. 8, 11 L. Ed. 159; Brown v. Strode, 5 Cranch, 303, 3 L. Ed. 108; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Wormley v. Wormley, 8 Wheat. 421, 5 L. Ed. 651; Russell v. Clark, 7 Cranch, 69, 3 L. Ed. 271; Wood v. Davis, 18 How. 467, 15 L. Ed. 460.

In my opinion, these demurrers turn squarely upon the question as to whether or not the Randolph-Macon Coal Company is an indispensable party. Will that company be directly affected to its detriment by a decree of this court that may afford relief to the complainant? If a court of equity grants relief to these bondholders for the fraud and deceit practiced by the unanimous action of the directors of the Randolph-Macon Coal Company, said company need not necessarily be affected to its detriment by such decree. This coal company may have an interest in the subject-matter in controversy, but it is not necessarily interested in the controversy between the bondholders and the directors of that company for the fraudulent conduct of said directors. If the court should order the defendant directors to secure the payment of these bonds in some other manner than that specifically designated, or to pay over to the trustee, or into the hands of the court, a sum of money sufficient to compensate the various purchasers of these bonds, it can in no wise harm the Randolph-Macon Coal Company as a corporation. The basis of this prayer for relief is the fraud practiced by the officers of said corporation. A corporation is simply a creature of the law. It, as such, never conceived or designed this deceit. It did nothing as a corporate thing in the consummation of this fraudulent scheme. It hath no soul; it sinneth not. It is what its officers make it; whether it is a public good, a nonentity, or a public evil, depends entirely upon the men who operate it. If fraud is committed, like that set forth in this complaint, approved unanimously by its board of directors, there is no question as to who should be pursued for redress. It is the men who have committed the wrong. To hold that this silent creature of the law,

the coal company, must be a party in order to enable the court to do justice with these directors, or any number of them, would be in effect holding that the complainants are without remedy. The coal company is by law denominated a citizen of Missouri. In order to reach it, the complainants must go to the state of Missouri for relief. When they get there for legal redress, they reach nothing but a bankrupt corporation. The parties that perpetrated the fraud, the directors, are not residents of Missouri, so they cannot be reached, especially if they are "an unwilling party." If these directors, who are by this complaint charged with this fraud (by these demurrers the fraud is admitted), cannot be reached without the Randolph-Macon Coal Company being brought into court as a joint party defendant, then there is no court under this government that has power to reach and mete out full justice to the real perpetrators of this fraud. If this is the law, all that need be done to escape just retribution for the fraud committed by these directors is for them, who are still the moving force of this corporation, to vote, as directors, that said corporation is "unwilling" to be a party to this cause. I do not concur in this view.

It is claimed by the defendants in support of these demurrers that, if the court is asked to decree the alternative remedy, there must be an accounting to ascertain how much of these bonds are now secured by the property of the coal company, and the amount of the deficiency, and they say "it requires no argument to demonstrate the impossibility of such an account and decree in the absence of the principal party interested"—the coal company. I am unable to see how this coal company, whose directors are unwilling that it should become a party hereto, can suffer or be injured in the least in any procedure that the court of equity for the Southern District of New York is likely to resort to in ascertaining what wrongs, if any, have been practiced upon these complainants, and affording relief therefor.

The demurrers of the defendants Gardiner, Read, and Hegeman are overruled, with leave to answer within 30 days; costs to be taxed by the clerk.

The defendant Central Trust Company of New York has filed its demurrer covering some of the same grounds set forth in the demurrers of the other defendants, and in addition thereto it alleges the following:

"It appears by the plaintiff's own showing and upon the face of said bill that it fails to state facts sufficient to constitute a cause of action against the said defendant Central Trust Company of New York."

I am unable to discover sufficient facts set forth in the bill to hold this Central Trust Company as a party defendant, and the complainants at the hearing conceded that they could not.

The demurrer of the Central Trust Company is sustained, without costs.