CLARENCE H. VENNER, Plaintiff, *v.* AMERICAN TELE-PHONE AND TELEGRAPH COMPANY et al., Defendants.

(Supreme Court, New York Special Term, January, 1920.)

Corporations — injunction to restrain issue of convertible bonds — contracts — evidence — stockholders' actions — Stock Corporation Law, § 6.

The certificate of incorporation of a company organized in 1885 with a capital stock of $100,000 contained no provision for an increase of capitalization. Three years later an amended certificate was filed which provided for an increase of the capital stock not to exceed at any time $50,000,000, and further that upon the issue of new stock pursuant to any such increase, the then existing stockholders of record should have a preferred right to subscribe, in proportion to their respective holdings, at any time within sixty days from the time the new stock should be offered. Successive increases of the capital stock of the company have been authorized pursuant to statute and its present capital is $500,000,000. In a stockholder's action to restrain the issue of $50,000,000 of convertible bonds of the company and the conversion thereof into capital stock, so far as issued and for an accounting, it appeared from the evidence, contrary to the allegations of the complaint, that an opportunity to subscribe for the new stock was given to the stockholders, in such fractional proportions of their holdings as were reasonably possible, and upon such notice as was practicable. Upon the dismissal of the complaint on the

merits, *held,* that treating the amended certificate filed in 1888 as a contract between the state and the stockholders, that the capital stock should be limited to the amount specified therein, there was nothing in the policy of the law to prevent an amendment of the contract, proposed by the entire ownership of the company and accepted by the state.

When, in 1899, all the stockholders agreed to increase the capital stock to $75,000,000 pursuant to the express assent of the state, they surrendered the contractual benefit which might be deemed to accrue to the company or to their holdings through the one-time limitation of $50,000,000 upon the issue of capital stock, and this limitation when once abrogated had no future effect.

The provision of the amended certificate of 1888, that existing stockholders should have a preferred right to subscribe to any increase within sixty days, etc., became ineffectual as to any increase after 1899, so far as concerned the period during which the right to subscribe should be exercised.

Apart from any agreement between the stockholders as to the right to subscribe, section 6 of the Stock Corporation Law does not seem to recognize or to preserve any pre-emptive right of subscription to bonds which have an incidental stock conversion privilege.

ACTION by a stockholder for an injunction to restrain issue of convertible bonds of defendant corporation and to restrain conversion of said bonds into capital stock of the corporation, so far as issued, and for accounting.

Elijah N. Zoline and Louis J. Vorhaus, for plaintiff.

John G. Milburn, Walter F. Taylor and J. M. R. Lyeth, for defendant.

ERLANGER, J.   The validity of an issue of $50,000,000 of convertible bonds of the defendant corporation is attacked by the plaintiff upon the ground that, so far as the bonds are convertible into capital stock, an increase of stock beyond the amount limited by the charter of the corporation would result, and that no

opportunity to subscribe to the new stock in propor-
tion to their existing holdings has been given to stock-
holders, including the plaintiff, in accordance with cer-
tain provisions of the certificate of incorporation,
which called for sixty days notice to stockholders
within which to exercise their right to subscribe. This
corporation was organized, in this state, in the year
1885 with a capital stock of $100,000, but the articles
or certificate of incorporation omitted any provision
for an increase of capitalization. To supply this omis-
sion, under the then existing laws (Laws of 1848, chap.
265, amd. by Laws of 1875, chap. 319), an amended
certificate was filed in the year 1888, which provided
for an increase of capital stock not to exceed, at any
time, $50,000,000, and contained the further provision
that upon the issue of new stock, pursuant to any such
increase, the then existing stockholders of record
should have a preferred right to subscribe for that
stock in proportion to their respective holdings at any
time within sixty days from the time when such new
stock should be offered for subscription. In the year
1890 the Stock Corporation Law was enacted and it
was thereby provided that any domestic stock corpora-
tion might increase or reduce its capital stock. Laws
of 1890, chap. 564, §§ 44–46; re-enacted, as amd., Stock
Corp. Law (Consol. Laws of 1909), §§ 62–64. An in-
crease could be authorized only by a vote of stock-
holders owning at least two-thirds of the stock, as the
law stood until the year 1893. It was then amended
(Laws of 1893, chap. 700) to permit the increase upon
a majority vote, and in this respect the statute has
since remained unchanged. Stock Corp. Law, § 63.
Successive increases of the capital stock of this cor-
poration have been authorized, pursuant to the statu-
tory requirements, and the present capitalization is
now $500,000,000, but it is argued in behalf of the

plaintiff that the corporation was limited, for all time, to a total increase not exceeding $50,000,000, by virtue of the certificate of increase, above referred to, which was approved by the stockholders and filed in the year 1888. In my opinion there is no substantial basis for this contention upon the facts of the present case. Treating this certificate as a contract between the state and the stockholders that the capital stock should be limited to the amount there specified, there is nothing in the policy of the law to prevent the state and the stockholders from amending that contract where the entire ownership of the corporation unites to propose an amendment which the state accepts. Here it appears that on March 25, 1899, the capital stock was increased from $25,000,000 to $75,000,000, by a vote of all the stockholders at a special meeting called for the purpose pursuant to the Stock Corporation Law. Thus the charter of the corporation, which consisted of the general incorporation laws of the state and of the certificate and other papers filed pursuant to law, became amended, so far as it was within the power of the state and of the owners of all the corporate interest to effect that result. Nothing was omitted which the law required. To request the state, in some form, to declare the certificate of 1888 abrogated was wholly unnecessary, since the state by its general laws had expressed its policy that any increase was to be permitted conformably to the statutory procedure. When all the stockholders agreed to the increase to $75,000,000 pursuant to the expressed assent of the state, they united to surrender the contractual benefit which might be deemed to accrue to the corporation, or to their holdings, through the one-time limitation of $50,000,000 upon the issue of capital stock, and, of course, this limitation, when once abrogated, had no future effect. So, too, the provision of the certificate

of 1888 that existing stockholders should have a preferred right to subscribe to any increase, within sixty days, became ineffectual as to increases after 1899, so far as concerns the period during which the right to subscribe should be exercised, for this sixty day period expressly relates to issues of stock up to the $50,000,000 limit within the terms of that certificate. The statute, apart from any agreement between the stockholders as to a right to subscribe, does not seem to recognize or to preserve any pre-emptive right of subscription to bonds which have an incidental stock conversion privilege (Stock Corp. Law, § 6), but it appears from the evidence that an opportunity to subscribe was given to the stockholders, in such fractional proportions of their holdings as were reasonably possible, and upon such notice as was practicable. The conditions of the financial market did not admit of a lengthy period within which the loan could be kept open to receive subscriptions from stockholders, if responsible bankers were to underwrite the issue. For a flotation of bonds under normal conditions, a longer period could perhaps have been accorded, but it is quite apparent that the notice to stockholders could not reasonably have been more extended in this instance, under the unsettled financial conditions which existed at the time the issue of these bonds was offered. So far as the plaintiff complains of the commission paid to the underwriters, the proof indicates that the expense was legitimate and was no more than reasonable for the services rendered and the financial risks assumed in assuring the flotation of the bonds, for the benefit of the corporation, at a period when the difficulty of marketing securities was unusually great. There should be judgment for the defendants for the dismissal of the complaint upon the merits, with costs.

Ordered accordingly.