Philip **HARFF** and Stephanie Harff,
Plaintiffs,

v.

Kirk **KERKORIAN** et al., Defendants.

Court of Chancery of Delaware,
New Castle.

July 23, 1974.

Arthur G. Connolly, Jr., Connolly, Bove & Lodge, Wilmington, Kreindler & Kreindler, New York City, for plaintiffs.

Henry N. Herndon, Jr., Eduard F. von Wettberg, III, Morris James, Hitchens & Williams, Wilmington, Terry N. Christensen, Wyman, Bautzer, Rothman & Kuchel, Beverly Hills, Cal., for defendant Metro-Goldwyn-Mayer, Inc.

E. Norman Veasey, Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, for appearing individual defendants.

QUILLEN, Chancellor:

This action is a combined derivative and class action challenging a singular corpo-

rate act—the declaration and payment of a $1.75 per share dividend by Metro-Goldwyn-Mayer, Inc., in the late fall of 1973.

Plaintiffs are holders of 5% convertible subordinated debentures due 1993 which were issued by Metro-Goldwyn-Mayer, Inc. (MGM), pursuant to an Indenture Agreement between MGM and The Chase Manhattan Bank (Trustee) dated July 1, 1968. On November 21, 1973, the Board of Directors of MGM declared a cash dividend, the first cash dividend since 1969, in the amount of $1.75 per share of common stock. Plaintiffs contend that the dividends were declared improvidently and for the financial benefit of defendant Kerkorian, a member of the Board of Directors as well as the controlling stockholder of MGM. Plaintiffs allege that the declaration of cash dividends (1) damaged MGM by depleting its capital, thereby endangering its future prospects and (2) damaged the debenture holders in that it impaired the value of the conversion feature and caused a decline in the market value of the debentures themselves.

On this basis, plaintiffs are simultaneously maintaining a derivative action on behalf of the corporation as well as a class action on behalf of all holders of MGM's convertible debentures, excluding the members of the Board of Directors. The defendants are the individual directors of MGM and the corporation itself. In connection with the derivative claim, plaintiffs seek to recover from the individual defendants, on behalf of the corporation, the amount of the cash dividends which was paid pursuant to the November 21 declaration and damages for the loss of the use of the funds which were appropriated to make the dividend payments. In addition, plaintiffs request that all damages which may be recovered on the derivative claim be placed in a constructive trust "for the benefit of the class members." With regard to the class action, plaintiffs seek to recover money damages for class members.

Defendants have moved to dismiss the derivative action on the ground that plaintiffs lack standing to maintain an action on behalf of MGM due to the fact that they are not stockholders. Defendants also seek dismissal of the class action on the following grounds: (1) plaintiffs cannot fairly and adequately protect the interests of the class which they are seeking to represent in light of the conflict of interests which arises out of the conflicting recoveries, i. e., damages on behalf of the corporation for the derivative claim as well as damages from the corporation on the class claim; (2) although plaintiffs' rights and remedies as holders of convertible debentures are governed by the Indenture Agreement pursuant to which the convertible debentures were issued, plaintiffs have failed to allege that the defendants have breached any of the terms of that Agreement and, therefore, plaintiffs have failed to state a cause of action; (3) the complaint fails to state a claim upon which relief may be granted in that it fails to allege that the conditions precedent to suit which are provided in the Indenture Agreement have been met; and (4) the "no-recourse" provision in the Indenture Agreement releases the directors of MGM from all liability to the plaintiffs and is an absolute defense to actions by debenture holders against the directors of MGM. This is the Court's decision, following briefing and oral argument, on defendants' motion to dismiss. In regard to the class claim, affidavits having been filed, the motion will be considered as one for summary judgment.

I.

## STANDING TO MAINTAIN DERIVATIVE ACTIONS

Defendants first contend that plaintiffs do not have standing to sue derivatively as they are not stockholders of MGM within the meaning of 8 Del.C. § 327, the terms of which are set forth below. Plaintiffs, on the other hand, argue that

the convertibility of their debentures into common stock of MGM provides them with the necessary standing to sue on behalf of MGM. Plaintiffs emphasize the fact that they are not suing on behalf of themselves but rather are seeking to enforce a claim which belongs to the corporation which management refused to assert.[1]

The only statutory provision in Delaware dealing with the derivative action is 8 Del.C., § 327, which provides as follows:

> "In any derivative suit instituted by a stockholder of a corporation, . . . it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."

Chancery Court Rule 23.1, Del.C.Ann., which sets forth the procedure for instituting a derivative action, contains similar language.[2]

■■ It is noted, as plaintiffs have asserted, that when read literally § 327 does not provide that only stockholders have standing to sue derivatively.[3] It must be recognized, however, that § 327 does not create the right to sue derivatively but rather restricts that right. Section 327 was enacted to eliminate strike suits and other abuses which developed along with the derivative suit. See Henn, Law of Corporations, § 358, 2nd Ed. (1970). The purpose behind its enactment in 1945 was to prevent what has been considered to be an evil, namely, the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of stock. Rosenthal v. Burry Biscuit Corporation, 30 Del.Ch. 299, 309, 60 A.2d 106, 111 (Ch. 1948).[4]

■ The derivative action was developed by equity to enable stockholders to sue in the corporation's name where those in control of the corporation refused to assert a claim belonging to the corporation. The nature of the derivative suit is twofold: first, it is the equivalent of a suit by the stockholders to compel the corporation to sue; and second, it is a suit by the corporation, asserted by the stockholders in its behalf, against those liable to it. Cantor v. Sachs, 18 Del.Ch. 359, 365, 162 A. 73, 76 (Ch.1932). Suits by stockholders alleging mismanagement on the part of the directors are of course included within the umbrella of a derivative action. Bokat v. Getty Oil Company, Del.Supr., 262 A.2d 246, 249 (1970).

■ But it has been generally accepted under Delaware law that only one who was a stockholder at the time of the transaction or one whose shares devolved upon him by operation of law may maintain a derivative action. Folk, The Delaware General Corporation Law, pp. 485–486. For purposes of a derivative action, an equitable owner is considered a stockholder. Rosenthal v. Burry Biscuit Corp., 30 Del.

1. Evidently one of the purposes of the lawsuit is to have the case governed by the "intrinsic fairness" test rather than the "business judgment" rule which would govern a stockholder suit due to the proportionate benefit to all stockholders from the dividend. Sinclair Oil Corporation v. Levien, Del.Supr., 280 A.2d 717, 721–722 (1971). As desirable as this might be from the plaintiffs' viewpoint, it seems irrelevant on the question of standing.

2. "In a derivative action brought by one or more shareholders . . . the complaint shall allege that the plaintiff was a shareholder . . . at the time of the transaction of which he complains or that his share . . . thereafter devolved on him by operation of law . . ." Chancery Court Rule 23.1.

3. Plaintiffs contend that the statutory language "[i]n any derivative suit instituted by a stockholder" indicates that nonstockholders may have standing to sue derivatively since it apparently limits its application to suits brought by stockholders.

4. The *Rosenthal* case dealt with the forerunner of 8 Del.C., § 327, which was Rev. Code 1935, § 2083A.

Ch. 299, 313, 60 A.2d 106, 113 (Ch.1948); Brown v. Dolese, 38 Del.Ch. 471, 479, 154 A.2d 233, 239 (Ch.1959), aff'd sub nom. Dolese Bros. Co. v. Brown, 39 Del.Ch. 1, 157 A.2d 784 (Sup.Ct.1960); Saks v. Gamble, 35 Del.Ch. 378, 381, 118 A.2d 793, 794 (Ch.1955), aff'd sub nom. Gamble-Skogmo, Inc. v. Saks, 35 Del.Ch. 503, 506, 122 A.2d 120, 121 (Sup.Ct.1956); Kenrich Corporation v. Miller, 377 F.2d 312 (3rd Cir. 1967). But Delaware law seems clear that stockholder status at the time of the transaction being attacked and throughout the litigation is essential. Levien v. Sinclair Oil Corporation, Del.Ch., 261 A.2d 911, 922 (1969), aff'd Sinclair Oil Corporation v. Levien, Del.Supr., 280 A.2d 717 (1971); Hutchison v. Bernhard, 43 Del.Ch. 139, 220 A.2d 782 (Ch.1965); Braasch v. Goldschmidt, 41 Del.Ch. 519, 199 A.2d 760 (Ch. 1964); Newkirk v. W. J. Rainey, Inc., 31 Del.Ch. 433, 436, 76 A.2d 121, 123 (Ch. 1950); Heit v. Tenneco, Inc., 319 F.Supp. 884, 886 (D.Del.1970).

■ The holder of an option to purchase stock is not an equitable stockholder of the corporation. Gamble v. Penn Valley Crude Oil Corp., 34 Del.Ch. 359, 364, 104 A.2d 257, 260 (Ch.1954). Debenture holders are not stockholders and their rights are determined by their contracts. Wolfensohn v. Madison Fund, Inc., Del. Supr., 253 A.2d 72, 75 (1969). A holder of a convertible bond "does not become a stockholder, by his contract, in equity any more than at law." Parkinson v. West End St. Ry. Co., 173 Mass. 446, 53 N.E. 891, 892 (1899), an opinion by Justice Holmes.

■ Plaintiffs conceded at oral argument that creditors generally are not entitled to sue derivatively. Nor does this case involve any statutorily recognized rights where debenture holders are deemed to be stockholders. Compare 8 Del.C., § 221. Nevertheless, plaintiffs contend that the convertibility feature of the debentures which they hold sets them apart from other creditors and gives them standing to maintain a derivative suit. Plaintiffs rely on Hoff v. Sprayregan, S.D.N.Y., 52 F.R. D. 243 (1971), wherein it was held that convertible debenture holders had standing to institute a derivative suit. In *Hoff,* the plaintiffs had alleged a violation of the Securities Exchange Act of 1934, which classifies convertible debentures within the definitional meaning of "equity security." 15 U.S.C.A. § 78c(a)(11). On the basis of this definitional section in the Federal Act, the District Court found that the convertible debenture holders were "stockholders" for purposes of bringing the derivative action.

In this case, plaintiffs are not suing under the Federal Act and they do not contend that they are stockholders of MGM. They do, however, argue that the result in *Hoff* should be followed due to their interest in the stock of the corporation. They also assert that inasmuch as the minority stockholders of MGM received their proportionate share of the dividends complained of, such stockholders are not in as favorable a position as are the plaintiffs to challenge the wrong to the corporation. According to the plaintiffs, such stockholders would either be precluded entirely from suing derivatively or would, at best, be faced with a very strict burden of proof.

■ Notwithstanding these arguments, the conclusion is inescapable that plaintiffs are creditors of MGM and simply do not have standing to maintain a stockholder's derivative action under Delaware law. The key differences were well noted in a recent New York case, In re Will of Migel, 71 Misc.2d 640, 336 N.Y.S.2d 376, 379 (Sup.Ct.1972):

"A share of stock is evidence of ownership of corporate assets (18 C.J.S. Corporations §§ 216, 220), and not evidence of corporate indebtedness as is a bond. A convertible bond is simply a bond convertible into stock under certain conditions (19 C.J.S. Corporations § 1146). From an investor's point of view, a bond is a less speculative invest-

ment because it is a secured debt entitled to priority in the event of corporate distribution or dissolution. That a bond is convertible at the sole option of its holder into stock should no more affect its essential quality of being a bond than should the fact that cash is convertible into stock affect the nature of cash. Any bond, or any property, for that matter, is convertible into stock through the intermediate step of converting it to cash.

"Except for cases involving the Securities Exchange Act of 1934, case law indicates that a convertible debenture is a bond and not an equity security until conversion occurs. (See Venner v. American Telephone & Telegraph Co., 110 Misc. 118, 181 N.Y.S. 45; Pratt v. American Bell Telephone Co., 141 Mass. 225, 5 N.E. 307; Parkinson v. West End Street Railway Co., 173 Mass. 446, 53 N.E. 891; Gay v. Burgess Mills, 30 R.I. 231, 74 A. 714.)

"As to the Securities Exchange Act of 1934, 15 U.S.C. Section 78c(a)(11) does define an 'equity security' to include all securities convertible in to stock. However, such definition is *expressly* limited to use within the Securities Exchange Act, and the rationale of the act and the cases interpreting the act do not warrant a broader application."

Plaintiffs have been unable to cite any cases decided under state law, Delaware or elsewhere, which allow a creditor of a corporation to enforce a corporate cause of action derivatively. In Brooks v. Weiser, S.D.N.Y., 57 F.R.D. 491, 494 (1972), the District Court stated:

"The fact that among the plethora of derivative suits brought over the generations none even discuss the issue [of whether or not creditors are entitled to sue on behalf of the debtor corporation] reflects the obviousness of the proposition that the right to sue derivatively is an attribute of ownership, justified on the theory that the plaintiff in such a

suit seeks to recover what belongs to the corporation, because as a co-owner, it also belongs to him."

■ It is obviously important that the Delaware corporate law have stability and predictability. The novel theory being suggested by the plaintiffs has no support under our law. The plaintiffs simply lack standing to maintain a derivative suit on behalf of MGM. The derivative cause of action is therefore dismissed. IT IS SO ORDERED.

## II.

## THE CLASS ACTION

Defendants argue that the class action should be dismissed for several reasons. Defendants first argue for dismissal due to the fact that plaintiffs are unable to satisfy the requirement of Chancery Rule 23(a)(4) that as representative parties they must fairly and adequately represent the interests of the class. It is defendants' position that the relief which plaintiffs are seeking in their class action is in direct conflict with the relief which plaintiffs seek in their derivative action inasmuch as plaintiffs are attempting to recover damages from the corporation and, at the same time, damages on behalf of the corporation. Defendants contend that plaintiffs cannot comply with Rule 23(a)(4) due to the conflict which exists.

As the Court has already ruled that plaintiffs have no standing to maintain the derivative suit, any conflict which may have existed due to the simultaneous actions by plaintiffs no longer exists. Therefore, defendants' motion to dismiss the class action on the ground of conflict of interests is now without merit.

Defendants' next position is that plaintiffs' rights as holders of convertible debentures are limited to the contractual rights and remedies which are set forth in the Indenture Agreement. Defendants argue that inasmuch as plaintiffs have

failed to allege a violation of any of their rights under the Indenture, the class action should be dismissed for failure to state a claim upon which relief may be granted. Defendants also contend that the class action is totally barred due to the fact that plaintiffs have failed to comply with a condition precedent to suit which is contained in § 8.04 of the Indenture, i. e., the "no-action" clause requiring a request by 25% of the convertible debenture holders that the trustee institute suit.[5]

Plaintiffs concede that they have alleged neither a violation of 8 Del.C., § 170, which is the dividend statute in Delaware, nor a violation of § 6.08 of the Indenture dealing with restrictions on the payment of dividends.[6] Despite this, however, plaintiffs maintain that they have stated an adequate claim on behalf of themselves and the class which they purport to represent. It is plaintiffs' position that the contract rights which they enjoy under the terms of the Indenture are not the only rights which they have as convertible debenture holders and that it is upon their rights which exist independently of the Indenture that plaintiffs are asserting the class claim. Plaintiffs also contend that the "no-action" clause and the condition precedent contained therein are inapplicable to plaintiffs' class action due to the fact that § 8.04 of the Indenture, by its own terms, applies only to suits brought by convertible debenture holders under the Indenture.

The basis upon which plaintiffs assert the class claim is an alleged breach by defendants of their fiduciary duty to refrain from acting in their own self interest. Plaintiffs contend that the dividends were improvidently declared and that they evidenced self-dealing on the part of the defendants since they were the controlling stockholders of MGM. The harm which plaintiffs claim they suffered as a result of the breach by defendants was the reduction of the market value of their debentures and the impairment of the conversion feature of their securities. Plaintiffs suggested at oral argument that the issue to be decided is whether or not the declaration of the challenged dividend constituted a breach of the defendants' fiduciary duties. A more fundamental question which must be dealt with, however, is whether or not any fiduciary duties existed as between defendants and the convertible debenture holders.

Plaintiffs do not contend that the payment of dividends resulted in the insolvency of MGM nor do they allege that the dividends violated any Delaware statute. And, although counsel for plaintiffs at oral argument categorized the declaration of dividends as amounting to fraud, plaintiffs have failed to allege fraud in their complaint on the class claim. The authorities cited by plaintiffs for the proposition that creditors can maintain an action against management for violation of rights which exist independently of the Indenture Agreement all involved either fraud or insolvency. E. g., Noble v. European Mort-

---

5. Section 8.04 of the Indenture provides, in part, as follows:

"No holder of any Debenture shall have any right by virtue of or by availing of any provision of this Indenture to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture . . . unless such holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than twenty-five per cent in aggregate principal amount of the Debentures then outstanding shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder . . . ."

6. Paragraph 26 of the complaint alleges only that the convertible debenture holders were damaged by the challenged dividend as follows:

"(a) the market value of the Debentures held by class members declined markedly;
(b) the ability of MGM to pay interest and principal on the Debentures held by class members became questionable; and
(c) the conversion feature of the Debentures held by class members became less valuable."

gage & Investment Corporation, 19 Del.Ch. 216, 165 A. 157 (Ch.1933); Slater Trust Co. v. Randolph-Macon Coal Co., 166 F. 171 (S.D.N.Y.1908). It is apparent that unless there are special circumstances which affect the rights of the debenture holders as creditors of the corporation, e. g., fraud, insolvency, or a violation of a statute, the rights of the debenture holders are confined to the terms of the Indenture Agreement pursuant to which the debentures were issued. Helvering v. Southwest Consol. Corporation, 315 U.S. 194, 200, 62 S.Ct. 546, 551, 86 L.Ed. 789 (1942); City of Covington v. Sanitation District No. 1, 301 S.W.2d 885, 890 (Ky.1957); see 19 Am.Jur.2d, Corporations, § 1069.

■■■■■ Part of the investment which plaintiffs have made in MGM is undeniably the right to convert their debentures into common stock of MGM. With this investment, however, runs no guarantee that the market value of the common stock will appreciate. The fact that the market value of the common stock is not suffi-ciently attractive to make conversion profitable at a particular time does not give rise to a cause of action against management. To the contrary, the legal payment of large cash dividends is a valid means by which a corporation can discourage convertible debenture holders from exercising their right to convert their debentures into common stock. 4 Cavitch, Business Organizations, § 92.01[3].

■■■■■ It is my opinion that no fiduciary duties existed as between the parties and that the rights of the convertible debenture holders in this case are confined to the terms of the Indenture Agreement. As plaintiffs have failed to allege any default under that Indenture the class claim must be dismissed. The effect of the "no-action" clause contained in § 8.04 and as well the "no-recourse" clause found in § 15.01 of the Indenture need not be determined. Summary judgment on the class claim is granted in favor of the defendants. It is so ordered.