Kenneth D. ANDERSON, Paul A. Moore
and Stanley S. Smazal, Plaintiffs–
Appellants,

v.

SOMATOGEN, INC., a Delaware Corpora-
tion, and its Predecessor Somatogenet-
ics International, Inc., a Colorado Cor-
poration, Defendants–Appellees.

No. 95CA1696.

Colorado Court of Appeals,
Div. IV.

Nov. 29, 1996.

Rehearing Denied Dec. 27, 1996.

Certiorari Denied Aug. 4, 1997.

McGeady Sisneros P.C., Larry G. Johnson, Denver, for Plaintiffs–Appellants.

Burns, Figa & Will, P.C., David Richman, Englewood, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

In this contract case involving stock purchase warrants, plaintiffs, Kenneth D. Anderson, Paul A. Moore, and Stanley F. Smazal, appeal from a summary judgment entered by the trial court in favor of defendant, Somatogen, Inc., and its predecessor, Somatogenetics International. Specifically, plaintiffs contend that the trial court incorrectly interpreted their stock purchase warrants as not providing antidilution protection effective against the issuance of additional shares of common stock. Plaintiffs also contend that the trial court incorrectly dismissed their breach of fiduciary duty claim as barred by the statute of limitations. We disagree with these contentions and, therefore, affirm.

In 1987, as part inducement for a loan of $50,000, plaintiffs received from defendant warrants to purchase 50,000 shares of Somatogen common stock at $1.50 per share. In consideration for loan extensions, the warrants were subsequently increased to provide for the purchase of 95,000 shares. At that time, there were about 9 million shares of common stock in the company outstanding.

In need of capital, the company issued and sold two classes of preferred stock to a venture capital group in October 1988. The preferred stock was to be automatically converted into common stock when the company went public.

In 1989, the company implemented a 10 for 1 reverse stock split (also know as a share combination), informing plaintiffs that, according to their terms, the warrants had been adjusted to allow for the purchase of 9,500 shares at $15 per share. Early in 1991, in anticipation of its initial public offering, the company implemented a 4 for 1 reverse stock split, and notified plaintiffs that their warrants had been changed to allow them to acquire 2,375 shares at $60 per share. The company also notified plaintiffs that the warrants contained no provision protecting them from the dilutive effect on their warrants of the issuance of new shares of common stock.

In July 1991, plaintiffs accepted substitute warrants, which allowed them to purchase common stock at the initial public offering price of $19. The substitute warrants also contained language releasing plaintiffs' rights under the old warrants. Later that year, the company issued and sold new shares of common stock in an initial public offering.

The expiration date of plaintiffs' warrants was October 31, 1993 and on October 28, 1993, plaintiffs sought to exercise them. By plaintiffs' interpretation, an antidilution clause preserved their right to purchase—for the same overall consideration originally contemplated (95,000 shares at $1.50 each, or $142,000)—an unchanging percentage (here, about 1%) of the company's common stock. At that time, there were about 10 million shares of common stock outstanding. Accordingly, plaintiffs tendered $142,500 and requested 107,670.6 shares of Somatogen stock. The company refused to sell the stock under those terms and on October 31, 1994, plaintiffs filed suit.

In their complaint, plaintiffs alleged breach of contract and breach of fiduciary duty. In response, defendant filed two motions for summary judgment: One asserting that the statute of limitations had run on both the breach of contract and breach of fiduciary duty claims, and the other claiming that the plaintiffs' rights under the original warrants had been released by their acceptance of substitute warrants.

The trial court first determined that plaintiffs' breach of contract claims had been timely filed. However, the trial court did not reach defendant's argument that plaintiffs' acceptance of substitute warrants released their rights under the original warrants because it found that the original warrants contained no antidilution protection from the issuance of new shares of common stock.

Accordingly, the court granted defendant's motion for partial summary judgment on the breach of contract claims.

The court also found, as a matter of law, that plaintiffs' cause of action for breach of fiduciary duty had accrued no later than June 30, 1991. Because the complaint had been filed more than three years after that date, the court entered partial summary judgment against plaintiffs on that claim as well.

All claims having been determined against them, plaintiffs filed this appeal.

## I.

Plaintiffs first contend that the trial court erred in granting defendant's motion for summary judgment on the breach of contract claims. Specifically, plaintiffs argue that the trial court misconstrued the language of the warrant. We disagree.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Ellerman v. Kite*, 625 P.2d 1006 (Colo.1981).

The moving party has the initial burden to show there is no genuine issue of material fact. Once the moving party has met this initial burden, the burden then shifts to the non-moving party to establish that there is a triable issue of fact. *Travers v. Rainey*, 888 P.2d 372 (Colo.App.1994). In determining whether summary judgment is proper, the non-moving party must receive the benefit of all favorable inferences that may be drawn from the undisputed facts. *Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58 (Colo.App. 1995).

The interpretation of a contract is generally a question of law for the court. *Aetna Casualty & Surety Co. v. Canam Steel Corp.*, 794 P.2d 1077 (Colo.App.1990). Whether a written instrument is ambiguous is also a question of law. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984). If there is no ambiguity in the contract, it will be enforced according to its express provisions, with its words accorded their plain and generally accepted meaning.

*Heller v. Fire Insurance Exchange*, 800 P.2d 1006 (Colo.1990).

A stock purchase warrant is purely an option to purchase stock that does not vest in the prospective purchaser an equitable title to, or any interest or right in, the stock. *See* 6A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 2641 (rev. perm. ed. 1989). As such, in the absence of provisions to the contrary, a stock purchase warrant is simply an option to take stock "as it turns out to be when the time for choice arrives." *See Parkinson v. West End Street Ry. Co.*, 173 Mass. 446, 448, 53 N.E. 891, 892 (1899). Thus, the value of such an option is speculative—any number of corporate or collateral events may change its value—and the burden of such risk falls on the holder of the warrant. *See Lisman v. Milwaukee L.S. & W. Ry. Co.*, 161 F. 472 (C.C.E.D.Wis.1908), *aff'd*, 170 F. 1020 (7th Cir.1909).

As pertinent here, unless the contract provides otherwise, a warrant holder may not complain, for example, when a corporation issues new capital stock, although such issue may lessen or destroy the value of the option. *See Parkinson v. West End Street Ry. Co., supra; Lisman v. Milwaukee L.S. & W. Ry. Co., supra.* Therefore, whatever rights a stock purchase warrant holder may have to require the obligor corporation to maintain the integrity of the shares are purely contractual. *See Helvering v. Southwest Consolidated Corp.*, 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789 (1942).

Such contractual protection often takes the form of what is termed an "antidilution clause." However, antidilution clauses are written in various ways and vary widely in the particular protections they provide. Among other things, if properly drafted, an antidilution clause can ensure the right to purchase a percentage of a company's common stock or a percentage of any new shares of common stock issued; it can preserve the value of the warrant at merger, consolidation, reorganization, or sale of assets; it can protect the warrant's value at a stock split-up, at the issuance of stock dividends, or at the sale of stock at below the warrant exercise price; and it can adjust the number of shares sub-

ject to the warrant, the exercise price of the warrant, or both. *See* 2 J. Cox, *Corporations* § 18.15 (1995); *Gandal v. Telemundo Group, Inc.*, 781 F.Supp. 39 (D.D.C.1992), *rev'd on other grounds*, 997 F.2d 1561 (D.C.Cir.1993); *Wright v. Heizer Corp.*, 560 F.2d 236 (7th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Special Situations Fund III, L.P. v. Versus Technology, Inc.*, 642 N.Y.S.2d 894 (N.Y.App.Div. 1996); *American General Corp. v. Continental Airlines Corp.*, 13 Del. J. Corp. L. 1075, 1988 WL 7393 (Del.Ch.1988), *aff'd*, 575 A.2d 1160 (Del.1990), *cert. dismissed*, 498 U.S. 953, 111 S.Ct. 376, 112 L.Ed.2d 390 (1990).

■ Of course, none of these antidilution protections is automatically part of a stock purchase warrant contract. Rather, the precise antidilution protection afforded to a warrant holder will depend on the express terms of the contract itself. *See Helvering v. Southwest Consolidated Corp.*, *supra*; cf. *Broad v. Rockwell International Corp.*, 642 F.2d 929 (5th Cir.1981), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (there is no antidilution protection at common law for debenture bonds, and if such protection is desired, appropriate provisions must be included in the contract).

Here, the original warrants provide, in pertinent part:

In the event that *all of the outstanding common stock of the company shall be changed into or exchanged* for a different number or kind of shares or other securities of the Company or of another corporation, whether through reorganization, recapitalization, share split-up, combination of shares, merger, consolidation, or otherwise, there shall be substituted for each share of Company stock which this Warrant is subject to, the number and kind of shares into which each such outstanding share of Company common stock shall be so changed or for which each such share shall be exchanged. Subject to any required action by the Company's shareholders, so long as this Warrant is effective, the number of shares of common stock covered by the warrant *prior to such exchange* and the price per share shall be proportionately adjusted for *any* increase

or decrease in the number of shares issued of the common stock of the Company so that the number of shares subject to this Warrant shall remain at the same percentage level of the outstanding shares issued by the Company and then outstanding that the holder of this Warrant enjoyed *prior to such exchange*. (emphasis added)

Plaintiffs argue that this provision gives them two types of antidilution protection. Specifically, they argue that the first sentence of the paragraph protects them in the event that the common stock of the company is changed in form whereas the second sentence provides an entirely different kind of antidilution protection—the right to purchase a fixed percentage of the company's common stock. We disagree. The second sentence implements the antidilution protection provided by the first sentence; it does not provide a discrete antidilution protection of its own.

Importantly, the two sentences of the warrant must be read together: The adjustment language contained in the second sentence applies only in the event that *all of the shares of common stock are exchanged.* It allows for an adjustment so that the percentage of shares covered by the warrant remains the same as it was "prior to such exchange." It is thus limited in its application to those events, as set forth in the first sentence, that involve the exchange of all of the shares of common stock. The issuance of additional stock is not the exchange of all of the stock of the company, and thus, the adjustment language contained in the warrant does not apply.

Accordingly, we agree with defendant, and with the trial court, that the warrant language is clear and unambiguous in not providing an option to purchase a set percentage of the company's common stock. *Cf. American General Corp. v. Continental Airlines Corp.*, *supra* (the warrant holder received an antidilution provision providing "the right to acquire, during a ten-year period, 25% of any future stock issue" of the company).

In so concluding, we disagree with plaintiffs' argument that the second sentence cannot be read to implement the first because it

cannot be applied when there is not an increase or decrease in the shares of common stock, as when the company is merged into another. By its own terms, the second sentence need not apply to each and every exchange contemplated by the first sentence of the warrant. The second sentence adjusts the shares of common stock covered by the warrant at *any* increase or decrease resulting from the exchange, that is, *if* there is an increase or decrease. Therefore, when all shares are exchanged, and *if* there is an increase or decrease in the number of shares issued and outstanding, then and only then will the warrants be adjusted to reflect such a change. When the company is merged into another, no shares remain, and thus that language is inapplicable.

Similarly, we disagree with plaintiffs' argument that the second sentence is redundant if interpreted only to implement the first sentence. There is no redundancy here. As noted, the first sentence defines the circumstances under which protection is available; the second sentence determines the adjustments that, if necessary, will be made to the warrants. For instance, without the language contained in the second sentence, there could be no adjustment to the warrant of the per share purchase price in the event of a stock split. That is, in a stock split, the language of substitution contained in the first sentence of the warrant would ensure that plaintiffs' warrants would cover an adjusted number of shares of common stock, but no adjustment would be made to price, which could render the warrants worthless.

Further, as noted, the second sentence has already been invoked precisely in this manner to adjust the price of the warrants when the reverse stock splits were implemented by the company.

## II.

Plaintiffs also contend that the trial court incorrectly determined the date of accrual of their claim for relief for breach of fiduciary duty and therefore erroneously granted defendant's motion for summary judgment on that claim. We disagree.

If we assume, for the purpose of this argument, that a fiduciary duty exists between defendant and mere warrant holders, *but see Gandal v. Telemundo Group, Inc., supra,* any such claim was barred by the statute of limitations.

All actions for breach of trust or breach of fiduciary duty must be brought within three years after the cause of action accrues. *See* § 13–80–101(1)(f), C.R.S. (1987 Repl.Vol. 6A); *Michaelson v. Michaelson,* 923 P.2d 237 (Colo.App.1995).

Such a claim for relief accrues when the breach is discovered or should have been discovered by the exercise of reasonable diligence. *See* § 13–80–108(6), C.R.S. (1987 Repl.Vol. 6A); *Eads v. Dearing,* 874 P.2d 474 (Colo.App.1993); *see also Irwin v. West End Development Co.,* 481 F.2d 34 (10th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 915, 39 L.Ed.2d 110 (1974) (a statute of limitations begins to run as soon as there is knowledge that trust has been violated). And, plaintiffs' argument to the contrary notwithstanding, there is nothing in *In re Trust Created by Belgard,* 829 P.2d 457 (Colo.App. 1991) that can be read to allow the date of accrual of a claim for relief for breach of trust or fiduciary duty to be, if later, the date of actual injury.

■ When the undisputed facts demonstrate that a plaintiff discovered or reasonably should have discovered the defendant's conduct as of a particular date, the issue of when the cause of action accrued may be determined as a matter of law. *Reider v. Dawson,* 856 P.2d 31 (Colo.App.1992), *aff'd,* 872 P.2d 212 (Colo.1994).

■ Here, it is undisputed that the company informed plaintiffs by letters dated July 15, 1991, that it was its position that the contract did not contain antidilution protection against the issuance of additional shares of common stock. And, in response to these letters, and understanding that the warrants were effectively worthless, plaintiffs each executed a release of their rights under the original warrants and accepted substitute warrants. These releases are dated July 26, 1991, July 27, 1991, and July 30, 1991. Hence, we agree with the trial court's deter-

minaton that plaintiffs' cause of action accrued no later than July 30, 1991, and, because the suit was not filed until October 31, 1994, plaintiffs' claim for breach of fiduciary duty is barred.

Finally, we do not view this appeal as frivolous and, therefore, decline either to sanction plaintiffs or to award defendant damages. *See* C.A.R. 38(d); *Wood Brothers Homes, Inc. v. Howard,* 862 P.2d 925 (Colo. 1993).

The judgment is affirmed.

NEY and CASEBOLT, JJ., concur.