**Charles M. SATTERFIELD, III, Plaintiff–Appellant,**

v.

**MONSANTO COMPANY; Solutia, Inc., Defendants–Appellees.**

**Docket No. 00–7389.**

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 2000.

Decided Jan. 22, 2001.

Joseph A. Barbaccia, Freeport, NY, for Plaintiff–Appellant.

Louis F. Bonacorsi, New York, NY, (Robert R. Reed, Bryan Cave LLP, New York, New York, of counsel), for Defendants–Appellees.

Before CARDAMONE, POOLER, and KATZMANN, Circuit Judges.

PER CURIAM:

Plaintiff Charles M. Satterfield, III appeals the judgment entered March 29, 2000 in the United States District Court for the Southern District of New York (Louis L. Stanton, J.), granting summary judgment dismissing his complaint, which had sought restitution for the value of his asserted stock holdings in defendants Monsanto Company (Monsanto) and Solutia, Inc. (Solutia). We affirm that judgment substantially for the reasons set forth by Judge Stanton in his thorough opinion. See Satterfield v. Monsanto Co., 88 F.Supp.2d 288 (S.D.N.Y.2000). We write because the subject of this appeal, which involves scrip, is one we have had little occasion to comment upon.

The complaint was dismissed because plaintiff's ancestors, from whom his interest derived, failed to take any of the required actions that would have put them or him in line to receive stock. Plaintiff brought the instant suit full of expectation that he could get something when nothing had been done and thereby improve his inheritance. Such expectation is in this case doomed to disappointment.

## A.

The facts are simply stated. Seventy-six years ago plaintiff's great-grandfather bought 50 shares of $1 par value stock in E.L. Smith Oil Company. Three years later in 1928 the par value was increased from $1 to $10, converting the holding of 50 shares to 5 shares, though the district court notes that no evidence suggests that the 50 shares actually were exchanged. When Smith Oil merged in 1938 with Lion Oil Refining Company (Lion Oil), every ten shares of $10 par value stock in Smith when surrendered entitled the holder to one share of Lion Oil. Thus, plaintiff regardless of whether he had held the 50 shares of $1 par value or had exchanged them for 5 shares of $10 par value in Smith was entitled, under the merger agreement between Smith Oil and Lion Oil, to one-half a share of Lion Oil. This small fractional shareholding entitled plaintiff's predecessor, again under the agreement, to a "Bearer Scrip Certificate for such fraction," which could be aggregated with other scrip certificates to be exchanged for full shares of stock in Lion Oil.

On the face of the certificate itself was a notice that it was not a stock certificate and that the holder was not a shareholder of Lion Oil. The district court found no evidence that the one-half share scrip certificate was aggregated with other scrip to entitle plaintiff's predecessor to any full shares of Lion Oil stock.

Within a short time period after the merger, Lion made three offers to buy the $1 par Smith stock for 85 cents per share, the price at which the merger was consummated. After the merger, Lion stock split twice, in 1947 and in 1949. Both were two-for-one stock splits that plaintiff maintains first doubled his half-share to one share and then in 1949 to two shares. In 1955, Lion merged with Monsanto in a stock-for-stock merger. At the time of the merger, Lion maintained a reserve stock account for the Smith shareholders that had not yet surrendered their Smith shares or their scrip. As a consequence, Satterfield maintains that this two-share interest in Lion Oil entitled his predecessors to receive stock in Monsanto after the merger with Monsanto in 1955 as well as stock in Solutia when Monsanto spun off Solutia in 1997.

## B.

We turn now to a brief analysis of the law governing scrip certificates. Scrip is

to be distinguished from fractional shares of a business corporation. The latter entitle the holder to voting rights, to dividends and to a share in the corporation's assets upon liquidation in proportion to the fractional shares held. Unlike the fractional shareholder, the holder of scrip is not entitled to exercise any shareholder rights unless the scrip certificate so provides. *See* 11 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5087 (perm. ed. rev.vol.1995).

Under Delaware law, which the parties agree governs this suit, scrip conveys only an expectancy interest, not a vested ownership interest in a corporation, except as set forth in the scrip certificates themselves. *See* Del.Code Ann. tit. 8, § 155 (1999); *Schreiber v. Carney*, 447 A.2d 17, 26 (Del.Ch.1982) (warrants); *see also Helvering v. Southwest Consol. Corp.*, 315 U.S. 194, 200–01, 62 S.Ct. 546, 86 L.Ed. 789 (1942). Here both the merger agreement between Smith Oil and Lion Oil as well as the Lion Oil scrip certificates explicitly stated that Lion Oil scrip holders were not shareholders of Lion Oil stock and were not entitled to the benefits enjoyed by Lion Oil shareholders.

Moreover, because the Lion Oil scrip was not outstanding stock, and because neither the merger agreement nor the scrip certificates conferred any protection against diminution in value, any Lion Oil scrip to which Satterfield's predecessors were entitled could not have participated in the stock splits of 1947 and 1949. *See Lynam v. Gallagher*, 526 A.2d 878, 882 (Del.1987); *see also Anderson v. Somatogen, Inc.*, 940 P.2d 1079, 1081–82 (Colo. App.1997). As a result, Satterfield's predecessors never aggregated sufficient scrip to trade for a whole share or more of Lion Oil stock, and they were therefore not entitled to any Monsanto stock or Solutia stock during the 1955 merger and the 1997 spinoff.

We have considered all of Satterfield's remaining arguments and found them to be without merit.

The judgment of the district court is accordingly affirmed.